■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES HUTH, Appellant. — Judgment of the Supreme Court, New York County (Leon Becker, J.), rendered September 22, 1981, convicting defendant, after a trial by jury of bribery in the second degree and assault in the third degree, and sentencing him on both counts to a period of probation of five years, unanimously modified, on the law and facts and as a matter of discretion in the interest of justice, to reverse defendant's conviction of bribery in the second degree and remanding that count for a new trial, reducing the sentence imposed on the assault count to three years of probation, and otherwise affirmed. Defendant Charles Huth was arrested in the Port Authority bus terminal for an assault. The arresting officers brought Huth to the police station in the terminal. Officer Mullally searched defendant and found $741 and some "personal papers" which were returned to him. Soon afterwards, Huth asked the officers to call one Jack Tully, which was done. When Tully arrived some 30 minutes later, he identified himself to the desk sergeant and asked to speak to O'Donnell and Mullally. According to Mullally, he asked these officers what he could do to straighten this out and then said "is 200 enough?" Huth was in the cell about 5 or 10 feet away at this time. Tully went to defendant and spoke to him and received a "wad" of money. According to O'Donnell, Tully returned to the officers and said "my friend is willing to go $300 to cut him loose. Is 300 enough? Would 300 be okay?" Tully then allegedly gave $300 to O'Donnell, who took it. O'Donnell told the sergeant what had happened, and showed him the money, and then placed Tully under arrest. In one pocket, Tully had $441 belonging to defendant and $296 of his own money in another pocket. Shortly afterwards, when Tully was placed in an adjoining cell, defendant said "I don't believe these guys. Isn't $300 enough? I'm in here for some bullshit." These basic facts are not in dispute. What was disputed at the trial were the circumstances and the sequence of what transpired. Jack Tully, who had pleaded guilty to bribery, testified he had spoken to the officers "quite a distance" away from the defendant, who was "quite drunk." He said he asked the defendant for his money, which the defendant gave him without comment. He never discussed with the defendant what the money was for. Defendant testified he was drunk when he was arrested and telephoned Jack Tully, a fellow bartender. He never requested that Tully bribe the police. Defendant testified he saw but did not hear Tully in

conversation with the police, and when Tully came over and asked for his money, he gave Tully $741, all the money he had. He thought that the money was to be used to post bail and had no idea that the money he gave Tully was to be used to bribe the officers. Had he wanted to attempt to bribe the officers, Huth said, he could have done it himself. When the arresting officer searched defendant, he saw and copied a note in defendant's notebook. This was never disclosed to defendant or his counsel. It was not recorded on the voluntary disclosure form. Neither counsel nor the court was advised that the prosecution might wish to use this material upon cross-examination. The note, or even the police officer's notes thereon, was never placed in evidence. According to defendant, the stimulus for writing the note was a robbery in the 26th Precinct in which antiques were stolen. The police, who knew the defendant was in the antique business, called him and asked if any of the Columbus Avenue shops he dealt with had received, or been approached with the stolen goods. He explained that he had left a telephone message for his partner, Paul (Fuhrman), who was more familiar with the Columbus Avenue stores, and signed it "your partner in crime," tongue-in-cheek. On cross-examination, the prosecutor asked defendant a number of questions *ad seriatim* which were based on the alleged contents of this note: "[PROSECUTOR]: Mr. Huth, did you ever pass on information to a friend of yours, named Paul, that you had information received about a thirty thousand dollar Burglary? Were you asked to check Paul's contacts, to see if that stuff was moved? Were you ever asked to check out because the owner might be willing to pay almost double what the stuff was worth? And were you not informed that the police officers would be at Jack's apartment, and to have someone call Jack's apartment while the police officers were there, ring twice, hang up, and call back? [DEFENSE COUNSEL]: Judge, there are about — I don't understand that, and furthermore, I would like a date, time, and place. [PROSECUTOR]: January 2nd, 1980. [DEFENSE]: And may I ask who said this to him. Have you ever heard? THE COURT: Counselor, this is cross examination. Q Were you ever asked to pass on that information to someone named Paul? A Yes. We were — may I clarify that or am I — [PROSECUTOR]: I would ask that the witness be restricted to answering the questions, Your Honor. THE COURT: Beg pardon? [PROSECUTOR]: I would ask that the witness be restricted to answering the questions. THE WITNESS: I can't clarify that? THE COURT: You'll get a chance to. Q And did you sign that note 'your partner in crime Chas.'? A I certainly did." A defendant who chooses to testify may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable factual basis (Richardson, Evidence [10th ed], § 498, pp 482-483; *People v Greer*, 42 NY2d 170, 176). In the instant case, however, the contents of the note certainly did not justify the imputation of defendant's involvement in burglary, dealing with stolen property and criminal activity in general. The questioning by the prosecutor impermissibly tainted defendant's credibility without any reasonable basis in fact. The prosecutor in summation again referred to the contents of the note in order to imply that the defendant had somehow been involved in a crime concerning stolen property and to further imply that he had the propensity to commit bribery. Thus she said, *inter alia:* "Also, defendant put his reputation of honesty in issue. He also said that he didn't know very much about police procedures and things like that, and yet, passing on messages to his contacts about stolen property, where the owner of the stolen property is willing to pay double for the return, and where is the contact to be made? Back to the police precinct, where one would normally think that crime investigations go? No, no. Mr. Huth admitted that he passed on a message that this

contact call Jack's apartment, ring twice, and hang up, while the cops would be there. Ladies and gentlemen, does it sound to me, but it's you who must decide, that Mr. Tully — I mean Mr. Huth is so unfamiliar with police and police procedures. Does that sound like someone who wouldn't pay some money to get out of jail?" Even if the cross-examination had been proper as pertaining to defendant's credibility, the questions and responses may not be used to prove a propensity to commit the crime for which defendant is on trial (*People v Mayrant,* 43 NY2d 236, 239). As shown above, this is precisely what the prosecutor argued in her summation, e.g., "Does that sound like someone who wouldn't pay some money to get out of jail?" Although neither the cross-examination nor summation were objected to at trial, the cumulative effect of the errors warrants our intervention "[a]s a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]; see CPL 470.15, subd 6, par [a]). This was not a case where the evidence of guilt of bribery was overwhelming. The facts were contested as to whether defendant could overhear the bribe offer by Tully; whether he was told the purpose of the money he gave Tully; and whether the statement he made subsequent to Tully's arrest was actually an admission or an unfamiliarity with police procedures. The improper cross-examination and statements in the summation may have adversely affected the defendant's credibility in the eyes of the jury. The cumulative effect of these improprieties was sufficiently prejudicial, under the circumstances here, to have deprived defendant of a fair trial (*People v Alicea,* 37 NY2d 601), as to the bribery count. We have examined defendant's remaining contentions and find them to be without merit. Concur — Ross, J. P., Asch, Bloom, Fein and Lynch, JJ.