THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ISAAC BROWN, Appellant.

Second Department, November 30, 1942.

154

[redacted]

*Tobias A. Keppler, David C. Lewis* and *Charles B. Hochberg* for appellant.

*Elbert T. Gallagher, District Attorney (John J. Dillon* of counsel), for respondent.

JOHNSTON, J. The indictment in three counts charged the defendant with attempting to commit the crime of murder in the first degree, assault in the first degree and assault in the second degree. He was convicted on all three counts and sentenced on the first count to State Prison for an indeterminate term, the minimum of which is ten and the maximum twenty years. Sentence was suspended on the second and third counts. The following is a brief summary of the facts:

Defendant, forty-one years old and married, was engaged in the insurance business in the borough of Manhattan. Complainant at the time of the alleged assault, was four days short of seventeen years of age and was a student at a business school. Her mother inserted in a New York newspaper an advertisement stating that complainant, a high school graduate with "secretarial knowledge," was seeking a position. Complainant testified that following the advertisement, which contained her telephone number, and on July 19, 1940, she called at defendant's office in response to his telephone message. The interview continued for upwards of two hours and defendant dictated a test letter to her, which she typed at home and mailed to him. On July 25, at defendant's request, she again went to his office and from there to a cafeteria and then to his apartment in the borough of Manhattan, where he committed a rape upon her. She told no one of her experience. As a result of the attack she became pregnant and in November she appealed to defendant

for help. He told her to say nothing to anyone but to trust him and he would take care of everything. About eight-thirty P. M. on December 19, 1940, defendant, on the pretense that he would abort her, took her from New York city to a parking lot behind a school at Mount Vernon. He tied her hands behind her back, had her lie down, stuffed a cloth into her mouth, put a cloth over her eyes and a wire around her neck, stating this was a "test" and if the reaction were favorable he would do the same thing about her abdomen. This was all with her consent. She also testified something was forced "in and out" of her neck and she felt as if she were being strangled and she then lost consciousness. She recovered consciousness about eleven-thirty P. M. and made her way to a neighboring house and stated she had been in an accident. There were multiple stab wounds on her neck. The police were summoned. She told the police of her experience with the defendant and later told the District Attorney the rape occurred at defendant's office.

Defendant was arrested the following morning at his apartment in New York city. He testified he met complainant at his office on July 19, but denied she called at his request. He stated she telephoned him on July 24, at which time he told her the test letter he had dictated to her was unsatisfactory. He further testified — and is corroborated by his wife and three friends — that he was out of town on July 25, the day of the alleged rape. He admitted meeting complainant by chance two or three weeks later at a subway station. About one month thereafter he again met her by chance on the street. At that time she told him of her condition and stated a school boy friend then in Boston was responsible. He advised her to inform her parents, but she replied she could not do so because they did not understand her. She telephoned him on December 13, and when she said she was contemplating suicide he agreed to meet her and did so that afternoon for the purpose of dissuading her. She also telephoned him on December 19, the day of the alleged assault, and he again advised her to inform her parents. He denied he took her to his apartment on July 25 or ever had intercourse with her. He also denied accompanying her to Mount Vernon and protested his innocence of the crimes charged.

The crime was a most revolting one, but the record presents a sharp issue of fact as to whether the defendant perpetrated it or complainant's injuries were self-inflicted.

Several errors are assigned by defendant's counsel, but there are two which require review and discussion, and these relate to a single subject. The first is that the court erred in admitting

certain evidence, and the second that the District Attorney in his summing up made improper comment concerning this evidence.

During defendant's cross-examination the District Attorney asked if he had not interviewed other girls at his office, mentioning several by name, including one Sylvia Selden. When defendant made evasive answers he was shown two letters written to Miss Selden and asked if they were in his handwriting. He replied: "I do not recall having written it, but it looks like my handwriting." The following day the District Attorney asked defendant a series of questions — in each of which he quoted a part of the letters — inquiring if defendant did not so write to Miss Selden. To each question defendant replied he did not. Subsequently, when asked "Is there anything on those papers that does not appear to be in your handwriting," he answered "No." At all times defendant denied he wrote the letters, although he said the handwriting "looks like" or "appears to look like my handwriting." The letters were then received in evidence. They disclose defendant required a secretary or assistant because he was going blind, and that he had offered Miss Selden a position, which she declined. Complainant testified that defendant also told her he was threatened with total blindness. The letters also contain many declarations of admiration and protestations of affection.

In our opinion the admission of the letters in evidence was error. The defendant, like any other witness, may be interrogated upon cross-examination as to any specific act or thing which may discredit him or impeach his moral character. Therefore, it was proper for the District Attorney to inquire if he, a married man, did not write a young girl letters expressing extravagant sentiments of love and passionate desire. The testimony was competent for the purpose of impeaching the credibility of the defendant, but it was not material to the main issue. The People, at whose instance the collateral evidence was elicited, in view of defendant's denials, were bound thereby and had no right to contradict it. (*People* v. *DeGarmo,* 179 N. Y. 130, 135; *People* v. *Perry,* 277 N. Y. 460, 467.) While the letters were received as bearing upon the defendant's credibility and the court instructed the jury that they may be considered only for that limited purpose, they were used to contradict his testimony on collateral matters by showing that he told Miss Selden the very things he denied saying to her, some of which were the same things the complainant testified he told her.

That the letters were highly prejudicial is apparent. That

they impeached defendant's character is obvious. That the District Attorney so regarded them and used them to create prejudice in the minds of the jury is manifest, for in his summing up, referring to the letters, he said: "It is in evidence in this case and you can examine the contents of this letter, and then you arrive at a conclusion of the type of individual that we are dealing with." But, as stated in *People* v. *Zackowitz* (254 N. Y. 192, 197): "Inflexibly the law has set its face against the endeavor to fasten guilt upon him [the defendant] by proof of character or experience predisposing to an act of crime."

The practice of offering evidence for one purpose — in this case testing the defendant's credibility — and using it for another — to show it was defendant's habit to contact young girls — is improper. (*People* v. *Zackowitz, supra; Coleman* v. *People,* 55 N. Y. 81, 88.)

The court properly charged that if the jury believed "that any witness [which included the defendant] has wilfully, falsely testified as to any material fact in issue you may disregard the whole or any part of such witness' testimony." But to paraphrase the language of Judge Rippey in *People* v. *Perry* (*supra*), we cannot speculate that the jury may not have found that defendant testified falsely as to the letters to Miss Selden and that he was therefore entitled to no credit at all.

The judgment of conviction should be reversed on the law and a new trial ordered. The appeal from the order should be dismissed.

Carswell, J. (dissenting). People's Exhibit No. 37 was admissible in view of the character of defendant's answers to questions relating to it, which answers, the jury were free to find, established that defendant had written the papers.

Lazansky, P. J., Hagarty and Taylor, JJ., concur with Johnston, J.; Carswell, J., dissents and votes to affirm the judgment and order, with memorandum.

Judgment of the County Court of Westchester County convicting defendant of the crimes of attempting to commit murder in the first degree, assault in the first degree, and assault in the second degree reversed on the law and a new trial ordered.

Appeal from order denying in part defendant's motion for a bill of particulars and certain other relief dismissed.