THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN SIMPSON, Appellant.

First Department, August 1, 1985

## APPEARANCES OF COUNSEL

*Mark C. Cogan* of counsel (*William E. Hellerstein,* attorney), for appellant.

*Deborah E. Seidenberg* of counsel (*Mark L. Freyberg* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SANDLER, J. P.

The defendant was convicted of assault in the first degree after a jury trial in which the single issue was whether or not he was legally justified in firing two shots that severely wounded the complaining witness.

The evidence presented at the trial discloses strong support for the jury's verdict, notwithstanding the unusual circumstance

that the complaining witness had pointed a gun at the defendant before the defendant shot him, and that the complaining witness at first falsely testified that he did not possess a gun, testimony which he recanted, and thereafter persisted in falsely denying that he had pointed the gun at the defendant. Viewing the evidence as a whole, it provides a persuasive basis for the jury's apparent conclusion that the complaining witness pointed the gun at the defendant only to prevent the defendant from interfering with his effort to gain entrance into the basement of the apartment in which the complaining witness lived, and that, accordingly, the defendant at the time he fired the shots did not reasonably believe that the complaining witness was "using or about to use deadly physical force", and in any event knew that he could have avoided the necessity of using deadly physical force by retreating. (*See*, Penal Law § 35.15 [2] [a].)

The central issue on this appeal is presented by the defendant's contention that he was unfairly prejudiced by the trial assistant's cross-examination of him with regard to an uncharged crime — his alleged participation in the murder of one Mahlon Woodbury. After a review of the record, I am persuaded that this aspect of the cross-examination was unfairly prejudicial and that the conviction should accordingly be reversed.

First, I do not believe that the record discloses a factual basis sufficient to have permitted the District Attorney to reach a good-faith conclusion that the defendant had participated in the killing of Woodbury. Assuming, arguendo, that there was a sufficient good-faith basis, it seems to me doubtful that any inquiry should have been permitted with regard to this uncharged crime upon an appropriate application of the principle that requires the balancing of the prejudicial impact of such inquiry against its probative value. In any event, the examination on the subject permitted by the trial court exceeded any appropriate purpose, unnecessarily and significantly exacerbated the prejudice inherent in any interrogation on the subject, and manifestly disclosed an impermissible purpose to persuade the jury that the defendant was guilty of a crime with which he had never been charged and which he denied having committed.

Well into the cross-examination of the defendant, which focused first on the events relevant to the crime for which he was on trial, and without any prior notice to the court, the District Attorney commenced his cross-examination of the defendant with regard to the uncharged crime with the following apparently innocuous question: "Do you know a Mahlon Woodbury?" The defendant said that he was not sure whom the District

Attorney was talking about. In response to a series of further questions the defendant said variously that he thought he had been to a basement apartment at 204 East 165th Street on January 2, 1982, that he was not sure of the day that he was at the apartment, although he recalled an occasion on which he had been to the apartment playing chess with others, and that he was in doubt as to the name of the apartment's owner.

The District Attorney then asked the following question: "At 10:30 P.M. did you, acting in concert with the other two people, shoot and kill Mahlon Woodbury on January 2nd, 1982 at a location known as 204 West 165th Street, in the basement apartment?" The defendant answered, "No."

During a side bar conversation requested by defense counsel, he objected that there had been no proof of any particularity as to the truth of the accusations, which were highly prejudicial, and that he would move for a mistrial if the line of questioning was pursued. In response to the court's request for the good-faith basis for the questions, in which the court observed that this was the first time he had heard of the issue, which had not been raised during the pretrial *Sandoval* application by either the District Attorney or defense counsel, the District Attorney responded that it was his understanding that Woodbury had been murdered on January 2, 1982 at the described basement apartment, that three people had been visiting at the time who were playing chess, and that he was shot to death after some kind of dispute that arose at about 10:30 P.M. He described the defendant as "one of the suspects in that murder", the basis for that suspicion being that the defendant's fingerprints were lifted off a beer bottle in the apartment of the deceased.

Defense counsel renewed his objection to any further questioning on the subject, observing that the defendant had denied participation in the killing and that any continuation would be an effort to suggest to the jurors that he had participated in a murder. Concluding that an adequate good-faith basis for the questioning had been established, the court permitted the District Attorney to "probe a little further, but within reason."

In response to further questions, the defendant denied knowing that Woodbury was dead, repeated his uncertainty about the name, and denied that detectives had attempted to talk to him about the homicide. The District Attorney then asked: "Q. Isn't it a fact that you consulted with a lawyer and refused to talk to them about that?" An objection to that question was sustained, which was immediately followed by a question as to whether anyone tried to talk to the defendant about the death of Woodbury, to which the defendant responded, "No".

The District Attorney then asked the following questions and elicited the following answers:

"Q. Are you aware, sir, that your fingerprints were lifted from a beer bottle in the apartment of Mahlon Woodbury?

"A. No.

"Q. Knowing, sir, that your fingerprints were lifted from a beer bottle of the apartment of Mahlon Woodbury, I ask you again, were you ever in Mahlon Woodbury's apartment at 204 East 165th Street in the County of the Bronx, a basement apartment."

After defense counsel's objection was overruled, the witness answered: "A. And I say again if it ain't the person whom I'm thinking of, I don't know." There followed a series of questions and answers in which the defendant testified in substance that there was a person, whose name he didn't remember, with whom he had played chess from time to time on 165th Street and Sheridan Avenue.

The basic principles governing an examination of the kind here undertaken by the District Attorney are, of course, well known. A witness may be interrogated upon cross-examination with respect to any immoral, vicious or criminal act of his life which may affect his character and show him to be unworthy of belief, provided the cross-examiner questions in good faith and upon a reasonable basis in fact. (See, Richardson, Evidence § 498 [10th ed].) The extent to which such questions may properly be put to a witness, including a defendant, is entrusted in the first instance to the discretion of the trial court whose ruling normally will not be disturbed in the absence of abuse of that discretion. In exercising that discretion the trial court is required to balance the probative worth of such inquiries with regard to prior specific criminal, vicious or immoral acts on the issue of a defendant's credibility against the risk of unfair prejudice to the defendant. (See, People v Schwartzman, 24 NY2d 241, 247; People v Sandoval, 34 NY2d 371, 375.) Where the witness denies having committed a prior wrongful or criminal act, the District Attorney may not undertake to refute the denial by proving contradictory facts. Although the District Attorney may, subject to the trial court's discretion, pursue such an inquiry in an effort to induce the witness to change his testimony (see, People v Sorge, 301 NY 198, 200) he may not through innuendo or suggestion attempt to persuade the jury to disbelieve the denial. (People v Malkin, 250 NY 185, 197; People v Slover, 232 NY 264, 268; People v Bilanchuk, 280 App Div 180, 186; see also, Fisch, New York Evidence § 458 [2d ed].)

In *People v Sandoval (supra)*, the Court of Appeals approved a procedure under which a defendant may secure in advance of trial a determination of the scope of cross-examination that the court will permit as to such prior conduct in order to assist the defendant in making a determination as to whether to take the witness stand. In outlining the procedure, the Court of Appeals said (at p 378): "[T]he defendant shall inform the court of the prior convictions and misconduct which might unfairly affect him as a witness in his own behalf."

Preliminarily, the facts in this case point up the need for reconsidering, in light of experience, the aspect of the procedure prescribed by the Court of Appeals in *Sandoval (supra)* that appears to place on the defendant the burden of informing the court of prior uncharged crimes in order to secure a pretrial ruling as to the scope of cross-examination that will be permitted. (*See also, People v Duffy,* 36 NY2d 258; *People v Poole,* 52 AD2d 1010.) As applied to questions concerning prior convictions and the facts underlying prior arrests, it is clearly sound to place the burden on the defendant since both the prosecutor and the defense are equally aware of these matters and there is no persuasive reason why a defendant seeking the benefit of a preliminary ruling should not go forward. As applied to uncharged crimes, however, an issue not before the Court of Appeals in *Sandoval,* and one on which the court's attention may not have been focused, the application of this procedure inevitably limits significantly the occasions on which the trial court will have an opportunity to consider the issue and does so without serving any compensatory purpose.

This undesirable result inescapably follows from two circumstances. First, it is unrealistic to expect defendants, who for the most part are not highly sophisticated or intelligent, to inform their counsel of crimes which they have committed but for which they were never arrested so that their counsel may inform the court and prosecutor of these matters on the speculative possibility that the prosecutor may be aware of these events and may intend to question the defendant concerning them if he should testify. No doubt it may be argued that the consequences of such a failure by a defendant are his own fault and that sympathy need not be wasted on him. But if the principles underlying *Sandoval (supra)* are as sound as I believe them to be, it seems wrong to interpose so significant an obstacle to their effective fulfillment, and particularly with regard to matters that are inherently likely to raise the most substantial questions as to the propriety of the cross-examination.

Second, the prescribed procedure with regard to the proposed cross-examination of the District Attorney as applied to uncharged crimes assumes that the defendant was in fact guilty of the crime for which he was never arrested — an assumption that is unacceptable in principle, and that may often be erroneous in fact. It is not easy to see how a defendant can reasonably be expected to divulge a crime which he denies having committed, which he may not in fact have committed, and with regard to which he may not even know that the prosecutor believes him to have been guilty. In short, as applied to uncharged crimes, the principle that "the defendant shall inform the court of the * * * misconduct which might unfairly affect him as a witness in his own behalf" effectively precludes pretrial consideration by the court of the appropriateness of the most doubtful kind of cross-examination.

Notwithstanding that which was said in *Sandoval* (*supra*), I believe it was an error in judgment for the trial prosecutor here under the totality of the circumstances not to have been more forthcoming with the court prior to the trial, although I do not view this as a ground for reversal. The importance of his intended cross-examination in this case must have been apparent to him. He knew, or should have known, that the intended cross-examination presented troublesome issues which a trial court might have resolved either by denying him the right to examine at all or by limiting the scope of the examination. From the fact that the defendant's alleged participation in the separate homicide was not presented by defense counsel in the *Sandoval* motion, the trial assistant must have been aware that counsel did not know that the defendant was a suspect in a homicide. Recognizing the reality of trial pressures on prosecutors, and appreciating that many, if not most, trial assistants would have responded as did this assistant, I believe that a balanced understanding of his responsibilities should have led him to inform the court before trial of the event about which he proposed to question the defendant. Certainly it was an error not to have informed the court of the intended examination before actually undertaking it, an approach that in effect confronted the court and defense counsel with a *fait accompli* before the court even considered the issue.

Turning to the principal substantive issue presented on this appeal, essentially two questions are presented. The first is whether any cross-examination with regard to the defendant's alleged participation in the homicide was justified. The second, assuming that some interrogation was appropriate, is whether

the defendant was unfairly prejudiced by the extent and nature of the examination that occurred.

In my opinion, the record fails to disclose a sufficient factual basis to support a good-faith belief by the trial assistant that the defendant was an actual participant in the Woodbury homicide. As already observed, the principle is a familiar one that interrogation of a defendant with regard to any immoral, vicious or criminal act is permitted only if the cross-examiner asks the questions "in good faith and upon a reasonable basis in fact." A review of the authorities discloses that the issue has been customarily addressed on the basis of this general formulation or a variation of it, without any effort to define more precisely the nature of the good-faith belief that permits such interrogation. An obvious question raised by the facts in this case, and I suspect in many others, is whether "in good faith and upon a reasonable basis in fact" is satisfied by information permitting the conclusion that a defendant *may* have committed a crime, or whether it requires evidence sufficient to support a good-faith conclusion that the defendant *in fact* committed the crime.

The judicial discussion most pertinent to this question appears in *People v Alamo* (23 NY2d 630), in which a majority of the Court of Appeals found a good-faith basis for the interrogation of the defendant and character witnesses upon a factual showing clearly more substantial than that disclosed in this case, although sufficiently doubtful to give rise to a notable dissenting opinion by Judge Burke that was joined by Chief Judge Fuld. In the opinion of the court majority, the governing rule was defined in the following words (at p 633): "The rule that evolves from the cases is that questions such as these * * * to the defendant * * * as a witness are not error if the prosecutor asked them in good faith, that is to say, if he had some reasonable basis for believing the truth of things he was asking about." Measured by this standard — "a reasonable basis for believing the truth of things he was asking about" — I do not believe that the trial assistant in this case disclosed to the court a reasonable basis for a belief that the defendant had participated in killing Mahlon Woodbury.

The single fact connecting the defendant with the Woodbury homicide was the presence of his fingerprints on a bottle of beer in the apartment of the deceased. By itself, this circumstance only established that the defendant had been present in that apartment either on the day of the homicide or within a few days prior to it. From what the trial assistant told the trial court, it may also be inferred that the appearance of the apartment after

the homicide indicated that several people had been present with the deceased at some recent point, playing chess, and that the deceased may have been shot by one of them as a result of a dispute. To what extent the appearance of the apartment excluded the possibility that the homicide had occurred after the participants in the social occasion had left, or after one or more of them left, is impossible to determine from this record.

The very most that can be concluded from what the District Attorney set forth as his good-faith basis was that the defendant was a suspect in a homicide, which is indeed how the District Attorney described him, not that he in fact had committed the homicide. Even if it can be accepted as sufficiently well established that the defendant was present at the time of the homicide, an inference which is at best doubtful, it would not follow that there was an adequate basis for assuming that he actually killed Woodbury or acted in concert with others in doing so. Even under that doubtful assumption, the most that the prosecutor could have reasonably concluded was that the defendant was one of three persons present when the homicide occurred, not that he actually committed the killing. Given the police judgment that Woodbury was killed as the result of a dispute occurring on a social occasion, there was no apparent justification for the District Attorney's conclusion, expressed in his questions to the defendant, that the three persons, acting in concert, joined in committing the homicide.

Assuming that the trial court was correct in finding a good-faith basis, however minimal, for some interrogation, a close question is presented as to whether the trial court would have been justified, upon an appropriate application of the familiar balancing criteria, in permitting any inquiry with regard to the Woodbury homicide, if it had been timely informed of the matter. I recognize, of course, that there is some authority sustaining as an appropriate exercise of discretion trial court rulings which permitted in varied circumstances defendants charged with crimes of violence to be questioned with regard to their commission of other crimes of violence, including murder. (*People v Zada,* 82 AD2d 926; *People v Lee,* 55 AD2d 658; *see also, People v Mayrant,* 43 NY2d 236, 239-240; *but cf. People v Walker,* 59 AD2d 666; *People v Smith,* 60 AD2d 963.)

Under the circumstances here presented, I believe that the issue should have been resolved against permitting any inquiry if the trial court had been given an opportunity to consider the issue before the interrogation commenced. The good-faith basis for questions with regard to the Woodbury homicide, assuming

there was a sufficient basis, was at best marginal, a circumstance that is surely entitled to be considered in the balancing process. Moreover, the nature of the issue presented in this case was such as to make particularly prejudicial any allusion to the defendant's possible involvement in a homicide. The defendant was charged here with an assault in which he admitted having shot the complaining witness but claimed to have done so in self-defense. Any suggestion to the jury that he had participated in the killing of another person was inevitably far more prejudicial to the defendant in an inappropriate way than can be justified by the supposed relevance of such inquiry to his credibility.

Assuming that some questioning of the defendant on the Woodbury homicide was justified, it is clear that the interrogation should have been more sharply circumscribed than it was. What occurred here was a careful, systematic effort by the prosecutor to persuade the jury that the defendant was guilty of an uncharged murder which he denied having committed, a clearly improper purpose. (See, People v Bilanchuk, supra; People v Malkin, supra.) The examination cannot reasonably be defended on the view that the prosecutor was merely probing the witness in an effort to persuade the witness to acknowledge that which he denied. The trial assistant could not possibly have hoped or expected that a defendant charged with an assault, and claiming justification, would acknowledge his guilt of a homicide for which there was insufficient evidence to arrest him. His manifest purpose was to invite the jury to evaluate the evidence in this trial on the basis that the defendant had participated in a murder, an effort particularly unacceptable here since the District Attorney himself had an insufficient basis for believing that to be the fact, although his questions were intended to communicate that belief. Particularly disturbing was the question to which an objection was sustained, but which was effectively repeated in a different form, as to whether the defendant, on advice of counsel, had refused to answer questions by police officers investigating the Woodbury homicide. (See, People v Pavao, 59 NY2d 282, 292; People v Von Werne, 41 NY2d 584.)

In People v Malkin (supra), the Court of Appeals (per Lehman, J.), in words that precisely describe what occurred here, said the following (at pp 197-198): "Where, however, by innuendo or suggestion, attempt is made to lead the jury to believe that the denial is not conclusive; where questions are permitted which are calculated by suggestion of misconduct to prejudice the jury regardless of the answer given, then it may hardly be said that the error in permitting the questions is harmless. The rule that an answer elicited on cross-examination is conclusive affords

little protection to an accused if the jury is induced to believe that it should act upon the assumption that the answer is untrue. The court may not close its eyes to results which are intended to flow and do flow from the question itself. We will not say that denial, made by a defendant on cross-examination, of misconduct in a collateral matter renders harmless a question which is 'asked for the improper purpose of planting in the minds of the jury suspicion and distruct [sic] by insinuations that the defendant has falsely denied his guilt as to collateral matters.' (*People* v. *Slover*, 232 N.Y. 264.)"

For the reasons set forth above, I believe that the defendant was unfairly prejudiced by the cross-examination with regard to the Woodbury homicide, and that his conviction should accordingly be reversed. Let me make an additional comment of a general nature addressed to what seems to me the central problem underlying the issue in this case and in many other cases.

The theoretical justification for permitting a defendant to be questioned with regard to an uncharged crime is that if the defendant in fact committed the crime it would be a relevant circumstance for the jury to consider in evaluating his credibility. It is upon the assumption that a defendant committed the criminal act that the balancing process becomes operative, which weighs the relevance of the criminal act to evaluating the credibility of the defendant as a witness against the prejudice that may arise out of the jury inferring from the act a predisposition to commit crimes. But it is unusual for a defendant who testifies in a criminal case in order to deny his guilt of a charge against him to admit that he committed a separate crime for which he was not arrested, particularly if the crime was a major one.

As lawyers and judges experienced in criminal trials well know, it is unrealistic to suppose in most situations that such questions are in fact asked by the trial assistant in the expectation that they will elicit such an admission. The reality is that such questions are usually asked on the view that, notwithstanding the expected denial, the defendant will be damaged to some extent by the jurors learning of the possibility that he committed another crime, even though the jury is not allowed to hear evidence that would permit it to evaluate responsibly the truth of the matter. The damage to the defendant in a criminal case from this kind of interrogation is of course exacerbated where the trial assistant is allowed, under the guise of attempting to persuade the defendant to acknowledge his guilt, to

present details in his questions whose inescapable impact is to persuade the jury that the defendant is in fact guilty of the uncharged crime.

No doubt it is a persuasive argument that a District Attorney should not be precluded from questioning a defendant with regard to crimes that the defendant committed because of the likelihood that the defendant will falsely deny his guilt. But the force of that argument seems to me significantly diminished by the fact that even in the unusual situation where a defendant admits his guilt, there then arises the separate difficult problem of instructing the jury to consider the admission only with respect to the defendant's credibility and not to infer from it a predisposition to commit crimes. At a minimum, the principle should be made absolutely clear that the trial court must examine with painstaking care the factual basis for any proposed cross-examination with regard to an uncharged crime to make sure that there is very solid evidence pointing to the defendant's guilt before any such questions are permitted, and that cross-examination thereafter allowed should be scrupulously limited to the stated appropriate purpose.

In his dissenting opinion in *People v Alamo* (*supra*), Judge Burke set forth what I believe continues to be the most perceptive judicial analysis in this State of the underlying issue (at p 638): "A 'good faith' belief that an alleged specific act of misconduct has a 'basis in fact' must be held to require more than a flimsy surmise, conjecture or suspicion unless we are willing to let the very purpose for which restrictions were imposed be thwarted by the prosecution's resort to 'an instrument which [it] may use not wisely but too well' (3 Wigmore, Evidence, § 983, pp. 550-551). In the face of the obvious potential for prejudice to the defendant, courts must be willing to reappraise the hallowed rules of evidence, such as the ones applied to the prejudice of the defendant in this case, in light of the realities of the trial context and especially in light of the difficulty which a lay jury must necessarily face in attempting the mental segregation of an item of evidence so that it considers that item for one limited purpose (credibility) but completely ignores that same evidence when it decides another issue (guilt of the crime charged)."

Accordingly, the judgment of the Supreme Court, Bronx County (Vincent Vitale, J.), rendered September 8, 1982, which convicted the defendant of assault in the first degree and sentenced him to an indeterminate term of from 4 to 12 years, should be reversed, on the law, and the case should be remanded for a new trial.

FEIN, J. (concurring). Although I believe the evidence against defendant was much stronger than Justice Sandler suggests, I concur with his analysis of the problem and agree that defendant's conviction should be reversed and the action remanded for a new trial.

The cross-examination of the defendant described in Justice Sandler's careful opinion effectively denied defendant a fair trial under both the US Constitution 14th Amendment and NY Constitution, article I, § 6: "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right." (*People v Crimmins,* 36 NY2d 230, 238.)

ROSS, J. (dissenting). I dissent and would vote to affirm the defendant's conviction of assault in the first degree (Penal Law § 120.10 [1]).

My analysis of the record leads me to conclude that overwhelming evidence supports the jury verdict. In my opinion, the majority understates the weight of this evidence, which indicates that the defendant, without dispute, shot the victim, a 67-year-old man, twice, wounding him seriously. As the Court of Appeals unanimously stated in *People v Cohen* (223 NY 406, 423): "Better than a court which reviews but the printed record are they [the jury] fitted to pass upon the guilt or innocence of the accused."

I disagree with the majority that defendant was prejudiced by the prosecutor's cross-examination of him, about an uncharged homicide.

The majority concede, as they must, considering the weight of legal authority, that a defendant may be cross-examined concerning any immoral, vicious, or criminal act, which has a bearing on his credibility. Of course, the questions that are asked must be asked in good faith (*People v Alamo,* 23 NY2d 630; *People v Schwartzman,* 24 NY2d 241, *cert denied* 396 US 846). The extent to which a defendant may be cross-examined about his prior bad acts rest within the sound discretion of the trial court (*People v Rahman,* 46 NY2d 882, 883). In the instant case, the defense trial counsel's objection to the prosecutor's cross-examination, was based solely on the prosecutor's good faith, and the defense counsel did not ask the trial court to balance the probative value against possible prejudice. In response to the defense request, the trial court held a side bar conference, to determine the good faith of the prosecutor's questions.

A unanimous Court of Appeals stated in *People v Sorge* (301 NY 198, 202): "although there may be room for a difference of opinion as to the scope and extent of cross-examination, the wide latitude and the broad discretion that must be vouchsafed to the trial judge, if he is to administer a trial effectively, precludes this court, in the absence of 'plain abuse and injustice' (*La Beau v. People, supra,* 34 N.Y. 223, 230), from substituting its judgment for his and from making the difference of opinion, in the difficult and ineffable realm of discretion, a basis for reversal."

Further, the Court of Appeals in *People v Alamo* (*supra,* at p 633) stated: "The rule that evolves from the cases is that questions such as these * * * to the defendant * * * as a witness are not error if the prosecutor asked them in good faith, that is to say, if he had some reasonable basis for believing the truth of things he was asking about."

Measured by this caveat, it is my belief, after examining this portion of the record, that the prosecutor showed the trial court a good-faith basis for the examination, such as that the defendant's fingerprints had been discovered on a beer bottle in the decedent's apartment and that the defendant had been considered a suspect in the homicide.

Even though the majority spend much of their opinion in speculation about the possible prejudice of the instant cross-examination, the defendant's experienced trial counsel never raised the issue of the allegedly prejudicial impact of the questions being asked by the prosecutor. Thus, the trial court was never alerted to an issue about the possible prejudice of these questions, which the defendant now raises for the first time on appeal, without having preserved them for review (*People v Medina,* 53 NY2d 951; CPL 470.05 [2]). Significantly, the majority do not claim that the defendant was denied the effective assistance of counsel at trial, and, on appeal before us, defense appellate counsel does not claim that defendant was denied the effective assistance of counsel.

In my view, there is no justification, upon this record, for this court to use its interest of justice powers to review an issue about prejudice that was never properly preserved for review.

Legal authority fully supports the trial court's decision to permit the prosecutor to continue questioning the defendant about this homicide, which occurred approximately six months before the instant crime. Both of these crimes involved acts of calculated violence, which indicated the defendant's willingness to place his self-interest ahead of the interests of society (*People v Duffy,* 36 NY2d 258; *People v Zada,* 82 AD2d 926).

It should not be overlooked that the experienced Trial Justice gave a very careful charge, which met the standards of justice and fairness and that charge was not objected to by defense trial counsel. The majority position about the question of prejudice is supported, in my opinion, by nothing more than sheer speculation.

Concededly, the prosecutor did not mention to the trial court and defense counsel prior to trial, that he intended to cross-examine defendant about the uncharged homicide. The majority makes so much of this omission in their opinion, that they, in substance, raise that omission to the level of reversible error, even though the majority offer no legal authority that supports their contention that such omission is error. I am unaware of any appellate court in this State that has previously reversed a case based upon a fact pattern similar to the one herein.

In addition, the majority, in several pages of their opinion appears to be laying down the kind of cross-examination of a defendant, that they believe the People should conduct. I fail to see the relevance of such instruction in this case. The prosecutor, in the subject matter, obediently followed the directions of the trial court. "[A] negative response by a defendant [does not] preclude further inquiry by the prosecutor in a legitimate effort to cause the defendant to change his testimony. Otherwise a 'witness would have it within his power to render futile most cross-examination.' (*People* v. *Sorge, supra,* p. 201.)" (*People v Schwartzman, supra,* at p 244.)

In conclusion, based upon my analysis this defendant received a fair trial and no reversible error was committed.

ASCH and KASSAL, JJ., concur with SANDLER, J. P.; FEIN, J., concurs in a separate opinion; ROSS, J., dissents in an opinion.

Judgment, Supreme Court, Bronx County, rendered on September 8, 1982, reversed, on the law, and the case is remanded for a new trial.