THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL GOTTLIEB, Appellant.

First Department, July 9, 1987

## APPEARANCES OF COUNSEL

*Andrew E. Abraham* of counsel *(Cynthia R. Finn* with him on the brief; *Philip L. Weinstein,* attorney), for appellant.

*Clare C. Patalkis* of counsel *(Norman Barclay* and *Lissa Griffin* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

SANDLER, J. P.

After a jury trial, the defendant was convicted of assault in the third degree under Penal Law § 120.00 (2), and acquitted both of assault in the second degree and of assault in the third degree under Penal Law § 120.00 (1), the jury apparently finding that the defendant, although not intending to do so, had recklessly caused physical injury to the complaining witness.

The trial testimony presented the jury with sharply conflicting accounts of the event from the complaining witness and her husband on the one hand, and the defendant on the other, raising a factual issue that the jury was clearly entitled to resolve as it did. Notwithstanding the more than adequate support for the jury's verdict in the trial testimony, we believe that the conviction should be reversed because of fundamental, indeed pervasive, error in the trial assistant's cross-examination of the defendant with regard to his alleged assaultive conduct in an unrelated event, error with an unmistakable, significant potential for unfair prejudice.

In the face of the defendant's emphatic denial of culpable behavior in the other event, and over timely objection, the trial assistant was improperly permitted to elicit, at length and in detail, that the alleged victim in the other event had accused the defendant of kicking her in the groin, and that he had received a summons to attend, and did attend, a dispute resolution center as a result of that accusation. When this part of the cross-examination is considered realistically, it becomes clear that the trial assistant was allowed to convert the alleged victim in the prior event into an unsworn witness against the defendant in this trial, and to invite the jury to infer from the fact of an accusation of behavior strikingly similar to that attributed to the defendant in this trial, a criminal predisposition to commit the kind of crime with which he was charged. What occurred violated fundamental and long-standing principles of law.

The incident in question occurred in the evening of November 3, 1984, in the laundry room of an apartment complex at 550 Grand Street in Manhattan. At a time when the complaining witness, Judith Sacks, then 63 years old, was alone in the laundry room, the defendant entered the room with his unleashed dog. Mrs. Sacks testified that the dog began to go into her clean laundry, and that when she asked the defendant to leash the dog, he did not reply, but simply stood there "smirking". When she repeated her request, the defendant crossed the room and knocked over her laundry cart, throwing her laundry on the floor. Fearing that the defendant was about to attack her, Mrs. Sacks raised her arms in front of her. The defendant then grabbed her upraised hands and bent her fingers back, "crushing" her right hand.

At that point her husband entered the laundry room and went toward the defendant, intending to hit him. Asking if Mr. Sacks wanted to fight, the defendant then swung at him, knocking his glasses off. The defendant then left the laundry room, returning within a few moments to retrieve his dog's leash.

Medical testimony established that Mrs. Sacks had sustained a fracture of the middle finger of her right hand.

The defendant, 42 years old at the time, in turn testified that he went to the laundry room with his sheep dog, who was not leashed, because the defendant required both hands to maneuver his shopping cart and did not expect anyone to be in the laundry room. He greeted Mrs. Sacks in a friendly way, asking her to move her laundry cart out of his way, and began to place his wash into one of the machines. Mrs. Sacks then asked him to put his dog on its leash, which he did not wish to do, and he reassured her that the dog was gentle and presented no danger. The defendant then testified that Mrs. Sacks became enraged, began to scream, demanding that the dog be removed from the laundry room, that he offered to leash the dog but refused to remove it, and that she then began cursing him.

He testified that Mr. Sacks then entered the laundry room and tried to calm his wife down. Mrs. Sacks then grabbed the laundry cart and shoved it toward his dog. He then grabbed the end of the cart to prevent her from running over the dog. Mrs. Sacks yanked the cart away, lost her grip and fell, cushioning her fall with her hands. Mr. Sacks then became very angry and advanced on the defendant, who told him not

to approach. The defendant said he then removed his dirty clothes from the washer, placed them in his shopping cart and left the laundry room to look for his dog, who by this time had disappeared.

The part of the cross-examination with which we are concerned opened with several questions in which the District Attorney elicited that the defendant knew a Frieda Spiro, who was a neighbor living at 550J Grand Street, and was an elderly woman. The defendant was asked whether Mrs. Spiro was 77 years old or thereabouts, and he said that he did not know. After several additional preliminary questions, the defendant was asked three questions to which he answered "No". These in substance were whether (1) on a particular day when Mrs. Spiro was entering the elevator he swung the door open so that it almost went into her face, (2) she complained to him about it, and (3) he waited for her in the lobby of the building and "kicked her in the groin." After the defendant's last denial, he was then asked whether he recalled being served with a summons to go to a dispute resolution center over this incident, and he responded that he could not answer the question because there was no incident. After several questions which the defendant indicated difficulty in answering because they assumed the fact of an "incident", which he denied having occurred, he agreed that he had gone to a dispute center with Mrs. Spiro.

This was followed by the following questions and answers:

"Q. You were served with a summons to go to that dispute resolution center, weren't you?

"A. That's the formality, yes.

"Q. It was because of that summons that you ended up at that dispute resolution center; isn't that right?

"A. Yes. Yes.

"Q. And Mrs. Spiro made certain accusations against you at that time; isn't that right?

"A. Well, we were in separate rooms so I don't know exactly what she said."

The defendant was then shown People's 6 for identification, apparently a police complaint report, asked to read it, and then asked whether it refreshed his recollection about the incident with Mrs. Spiro. The defendant responded, "When you said over an incident that's where I thought you know off base—". The District Attorney then asked whether the incident she was referring to "is the incident that is documented

in that document People's 6; isn't that right?" The defendant answered no. He was then asked:

"Q. You never kicked Mrs. Spiro in the groin, a seventy-seven year old Mrs. Spiro?

"A. No, I never did that.

"Q. So Mrs. Spiro was lying when she made these allegations; is that right?"

An objection to this last question was sustained. Apparently unwilling to leave anything to the jury's imagination as to the point intended to be made by the questions concerning Mrs. Spiro, the trial assistant promptly asked:

"Q. You never touched Mrs. Judith Sacks in the laundry room on November the 3rd, 1984, did you?

"A. I have already answered that no."

The basic principles governing an examination of the kind that was here undertaken are well known, and were recently summarized by this court in *People v Simpson* (109 AD2d 461, 464): "A witness may be interrogated upon cross-examination with respect to any immoral, vicious or criminal act of his life which may affect his character and show him to be unworthy of belief, provided the cross-examiner questions in good faith and upon a reasonable basis in fact. *(See,* Richardson, Evidence § 498 [10th ed].) The extent to which such questions may properly be put to a witness, including a defendant, is entrusted in the first instance to the discretion of the trial court whose ruling normally will not be disturbed in the absence of abuse of that discretion. In exercising that discretion the trial court is required to balance the probative worth of such inquiries with regard to prior specific criminal, vicious or immoral acts on the issue of a defendant's credibility against the risk of unfair prejudice to the defendant. *(See, People v Schwartzman,* 24 NY2d 241, 247; *People v Sandoval,* 34 NY2d 371, 375.)* Where the witness denies having committed a prior wrongful or criminal act, the District Attorney may not undertake to refute the denial by proving contradictory facts. Although the District Attorney may, subject to the trial court's discretion, pursue such an inquiry in an effort to induce the witness to change his testimony *(see, People v Sorge,* 301 NY 198, 200)* he may not through innuendo or suggestion attempt to persuade the jury to disbelieve the denial. *(People v Malkin,* 250 NY 185, 197; *People v Slover,* 232 NY 264, 268; *People v Bilanchuk,* 280 App Div 180, 186; *see also,* Fisch, New York Evidence § 458 [2d ed].)"

In addition to the rules summarized in *Simpson (supra)* and pointedly pertinent to the cross-examination described above, it is a long-established principle, the reason for which is apparent, that the credibility of a witness, particularly a defendant in a criminal case, may not be impeached on the basis of an accusation of prior criminal conduct. *(See,* Richardson, Evidence § 506 [Prince 10th ed]; *see also, People v Morrison,* 195 NY 116; *People v Cascone,* 185 NY 317, 334; *cf., People v Marendi,* 213 NY 600, 619.)

Preliminarily, we think it clear that the strikingly similar character of the assaultive behavior attributed to the defendant with regard to Mrs. Spiro, to that for which he was on trial, coupled with the emotional implications of a reference to an assault on a 77-year-old woman, presented a potential for unfair prejudice that made it particularly urgent to limit closely any such interrogation to its ostensible legitimate purpose, which is the eliciting of information relevant to evaluating the credibility of the defendant. In this trial, the cross-examination was not so limited.

In particular, the cross-examination violated two fundamental principles of law. First, the trial assistant was permitted to cross-examine the defendant with regard to an accusation. As set forth in Richardson *(op. cit.* § 506): "A witness cannot be asked whether he had been arrested or indicted, for an arrest or indictment is a mere accusation of guilt. People v. Morrison, 195 N.Y. 116 * * * People v. Cascone, 185 NY 317". It makes no difference that the defendant was questioned, not about a prior arrest or indictment, but rather about the accusation of the alleged victim and a summons to attend a dispute resolution center based on that accusation. The vice of the questions addressed to defendant is precisely the same and arises from the obvious unfairness in permitting the credibility of the witness to be impeached on the basis of someone's accusation in an unrelated matter.

In addition, the cross-examination violated the principle set forth by the Court of Appeals in *People v Malkin* (250 NY 185, 197, *supra)* in words that could not apply more precisely. "Where, however, by innuendo or suggestion, attempt is made to lead the jury to believe that the denial is not conclusive; where questions are permitted which are calculated by suggestion of misconduct to prejudice the jury regardless of the answer given, then it may hardly be said that the error in permitting the questions is harmless. The rule that an answer

elicited on cross-examination is conclusive affords little protection to an accused if the jury is induced to believe that it should act upon the assumption that the answer is untrue. The court may not close its eyes to results which are intended to flow and do flow from the question itself."

What occurred here cannot be justified on the basis that the District Attorney was merely intending to refresh the recollection of the witness. The defendant's denial of the conduct attributed to him was emphatic and repeated, and disclosed no failure of memory that required refreshing. The only uncertainty in his answers occurred after he was improperly questioned with regard to the summons, and that uncertainty clearly derived from his unwillingness to accept the assumption in several questions that there had in fact been an incident. Even if the defendant's testimony disclosed some uncertainty of recollection with regard to the prior event before the improper question about the summons, which it did not, the interrogation by the trial assistant cannot reasonably be justified as a good-faith effort to refresh the recollection of the witness.

Nor can the cross-examination be sustained as an appropriate effort to pursue the inquiry in an effort to induce the witness to change his testimony under the principle set forth in *People v Sorge* (301 NY 198, 200) an authority whose broadly permissive approach to the right to cross-examine with regard to prior criminal or immoral acts seems inconsistent, in any event, with the balancing test as it has subsequently developed. *(See, People v Sandoval,* 34 NY2d 371, 378.) No doubt there are circumstances in which it is unclear whether the cross-examination represents a permitted effort to induce a defendant who has denied a prior criminal act to change his testimony, or a prohibited effort to persuade the jury to disbelieve the denial. No such uncertainty can be found in this case.

It could hardly be clearer that what occurred represented a sustained effort to persuade the jury to disbelieve the defendant's repeated denials that he had assaulted Mrs. Spiro. Moreover, nothing in *Sorge (supra)* or any authority of which we are aware, sanctions the right of a trial assistant to persuade a defendant who has denied a prior criminal act to change his testimony by asking him whether or not he had been accused of the act which he denied committing. The rule that prohibits impeachment on the basis of an accusation would be effectively nullified if a prosecutor, precluded from

asking about the accusation in the first instance, had the right to wait until the defendant denied the prior criminal act, and then confront him with the fact of the prior accusation.

The underlying reality of what occurred is clear. The trial assistant improperly elicited that the defendant had been accused of an assault under circumstances almost identical with that for which he was being tried, effectively converted the alleged victim of a prior assault into an unsworn witness against the defendant, and pointedly encouraged the jury to convict the defendant on the basis of a predisposition to commit precisely the kind of crime alleged to have occurred here.

Accordingly, the judgment of the Supreme Court, New York County (Edwin Torres, J., at jury trial and sentence), rendered July 25, 1985, which convicted defendant of assault in the third degree and sentenced him to a term of imprisonment of 60 days, to be followed by a term of probation of two years and 10 months, should be reversed, on the law, and the case should be remanded for a new trial.

MILONAS, J. (dissenting). In my opinion the judgment being appealed herein should be affirmed.

Defendant herein was convicted, following a jury trial, of assaulting 63-year-old Judith Sacks in the laundry room of the apartment building in which they both resided after she repeatedly requested him to leash his dog. The facts surrounding this incident are described in detail in the majority opinion. On appeal, defendant contends that it was reversible error for the court to have allowed the People to cross-examine him about a prior assault on another elderly woman, Frieda Spiro. In that connection, it should be noted that, before trial, defense counsel asserted that his client had no prior criminal record and that he was unaware of any prior bad acts by defendant. In response to an inquiry from defendant's attorney, the prosecutor claimed that she did not know of anything at this point which could be used to impeach defendant. However, she reminded counsel that, pursuant to *People v Sandoval* (34 NY2d 371), it was defendant's burden to come forward with any prior convictions or bad acts that he wished to exclude. Although defendant's lawyer attempted to register a standing objection to any proof of prior bad acts by the People, the court denied the motion, explaining that if such evidence was elicited at trial, he would rule on its admissibility at that time. Indeed, as the Court of Appeals

declared in *People v Matthews* (68 NY2d 118, 123) with respect to the prosecutor's introduction of previous criminal or otherwise immoral conduct: "However, there is no reason to generally shift the burden to the prosecutor when he only intends to use such evidence if the defendant testifies on his own behalf. The decision to testify is entirely within the control of the defendant who should anticipate cross-examination regarding prior criminal or immoral acts, and can generally prevent any prejudice by moving to prohibit or limit questioning on these matters before he takes the stand. A defendant who has been charged with or convicted of particular crimes and who chooses to testify can hardly claim surprise if he is asked about them on cross-examination."

The law is well established that "a defendant who chooses to testify may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable basis in fact" *(People v Duffy,* 36 NY2d 258, 262, *cert denied* 423 US 861; *see also, People v Mayrant,* 43 NY2d 236; *People v Wright,* 41 NY2d 172). Of course, a balance must be struck between the probative value of such evidence, on the one hand, and the risk of unfair prejudice to defendant, on the other *(People v Mayrant, supra).* While proof of other crimes or bad acts cannot be offered solely for the purpose of showing that defendant is of such a criminal bent that he is likely to have committed the crime charged, "questioning concerning other crimes is not automatically precluded simply because the crimes to be inquired about are similar to the crimes charged" *(People v Pavao,* 59 NY2d 282, 292).

In *People v Simpson* (109 AD2d 461) relied upon by the majority, this court aptly observed that the extent to which cross-examination of a defendant about his previous criminal or immoral acts is permissible is within the discretion of the Trial Judge and will not be disturbed absent an abuse of that discretion. However, it appears to be the opinion of the majority that it was an improvident exercise of discretion for the trial court to have permitted any inquiry whatever with regard to the event involving Mrs. Spiro, notwithstanding the appellate authority to the contrary, because the prejudice to defendant was so great as to outweigh the probative worth of an attack on his credibility. I disagree.

In the instant matter, the prosecutor asked defendant a series of questions as to whether he was acquainted with

Frieda Spiro, an elderly woman living in his building, and whether he had swung an elevator door in her face and subsequently kicked her in the groin. Defendant answered "No" in reply to each of the questions. The prosecutor then inquired if defendant recalled being served with a summons to attend a dispute resolution center as a result of the incident involving Mrs. Spiro. Defendant denied the altercation with Mrs. Spiro a number of times before finally admitting that he had, in fact, been summoned to a dispute resolution center over the incident. In the course of her interrogation, the prosecutor, in order to refresh defendant's recollection, produced and had marked for identification documentary evidence of Mrs. Spiro's complaint against defendant. According to defendant, the line of questioning pursued by the People violated this court's holding in *People v Simpson (supra)*, particularly where we stated that when "the witness denies having committed a prior wrongful or criminal act, the District Attorney may not undertake to refute the denial by proving contradictory facts. Although the District Attorney may, subject to the trial court's discretion, pursue such an inquiry in an effort to induce the witness to change his testimony * * * he may not through innuendo or suggestion attempt to persuade the jury to disbelieve the denial" (at 464).

Based upon the record of the prosecutor's cross-examination of defendant, it is not at all evident that the prosecutor endeavored through innuendo or suggestion to persuade the jury to disbelieve defendant's denial. Rather, she appears to have done precisely what is authorized under *People v Simpson (supra)*, that is, continue her inquiry, subject to the trial court's discretion, in order to induce defendant to alter his testimony. Further, *Simpson* does not require that the People immediately cease questioning a defendant regarding his prior criminal or other bad acts the moment he offers a denial. That case merely stands for the proposition that the prosecutor may not prove contradictory facts; the People are certainly allowed, within the appropriate limits of the trial court's discretion, to attempt to undermine defendant's credibility. Unlike the situation in *Simpson*, where the prior bad act in question was a homicide only remotely connected to defendant therein, the prosecutor's questions in the present case were in good faith and had a reasonable factual foundation since defendant had indeed been served with a summons to attend a dispute resolution center. The use of the documentary evidence of the dispute resolution center proceeding was cer-

tainly warranted in order to refresh defendant's recollection after he had denied knowledge of the underlying altercation and its consequences. Indeed, its use achieved precisely the result for which it was intended as the defendant, when presented with the dispute resolution paper, changed his testimony and recalled the prior incident.

Ross, J. (dissenting and concurring in the dissent of MILONAS, J.). I agree with Justice Milonas' dissent, and would affirm the judgment.

Furthermore, I would add that, based upon my examination of the record herein, I find that the People acted in good faith in cross-examining defendant about the alleged bad act he committed in kicking Mrs. Frieda Spiro, since, by not seeking a ruling in advance of taking the stand, defendant waived his objection to the People raising that subject *(People v Matthews,* 68 NY2d 118, 123 [1986]). In other words, the People did not unfairly surprise or take advantage of the defendant.

SULLIVAN and ROSENBERGER, JJ., concur with SANDLER, J. P.; MILONAS, J., dissents in an opinion; Ross, J., concurs in the dissenting opinion of MILONAS, J., and dissents separately in an opinion.

Judgment, Supreme Court, New York County, rendered on July 25, 1985, reversed, on the law, and the case remanded for a new trial.