# THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE LEDIARD, Appellant.

First Department, May 7, 1981

APPEARANCES OF COUNSEL

*Howard B. Comet* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Vida M. Alvy* of counsel *(Billie Manning* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

OPINION OF THE COURT

Ross, J.

On Friday night, March 10, 1978, a group of teenagers were drinking beer and playing frisbee at a certain Bronx intersection. Complainant Kevin O'Sullivan, his brother Patrick and Anthony D'Amato, were among this congregation. Two and one-half hours later, tired of this activity, the above-mentioned trio proceeded to a local restaurant. They emerged from this establishment at approximately midnight and encountered two other acquaintances, one of whom was William Brennen. The latter two were coming from a party where alcoholic beverages had been served. Together these individuals proceeded to the intersection of Kingsbridge Road and Sedgwick Avenue, with their eventual destination being a neighborhood park. At a mid-roadway island of the above intersection, Kevin O'Sullivan picked up a bag of garbage, which had been discarded and hurled it towards D'Amato. This missile missed its intended target and struck a passing vehicle. The driver, a black man, stopped his car and demanded to know why O'Sullivan threw the bag at him. The latter apologized. However, an argument ensued and racial insults were exchanged.

At this point a second black man, later identified as the defendant, who was standing across the street between a real estate office and "Hickey's" bar, began to shout encouragement to the driver of the car. The defendant and this group of teenagers then shouted racial epithets at each other. Brennen was the only one of the group of teenagers to testify that he saw defendant come out of "Hickey's"

bar prior to engaging these youths in this verbal exchange. The others testified that they first noticed defendant standing near the curb between the above-mentioned businesses. After a minute of trading insults, an anti-crime police unit arrived and calmed the situation.

The teenagers then continued to cross the street. Kevin O'Sullivan and Brennen testified that they saw defendant and a woman enter a green taxicab. This vehicle then made a U-turn on Kingsbridge Road and stopped for a traffic light. When it started up again, the cab slowly drove past complainant and his friends. Complainant, Brennen and D'Amato testified that as the car passed, defendant reached out of the rear window of the cab and fired one shot from a small nickel-plated pistol at them. This single bullet struck Kevin O'Sullivan in the neck causing serious injuries. Complainant spent 26 days in the hospital and at the time of trial the bullet was still lodged in his neck.

The defendant called several witnesses to testify on his behalf. For purposes of this appeal it is necessary only to refer to the relevant portions of the testimony of the two character witnesses and the alibi witness. Defendant's landlord, the first character witness, testified that he had known defendant for the past four years and that defendant had a peaceful reputation in the community. However, this witness admitted on cross-examination that he had never discussed the defendant's reputation with anyone. The prosecutor then asked if the witness *knew* that the defendant had been charged with possesion of a starter's pistol in 1957[1] and whether the witness *knew* that defendant had been charged with burglary and possession of burglar's tools in 1974.[2] Defense counsel raised no objection to these questions. In addition, the prosecutor asked this question: "Did you know that on March 10, 1978 in Hickey's Bar, the defendant showed * * * the bartender at Hickey's Bar, a loaded .22 calibre pistol; did you know that?" This question was asked three times and objections were raised. The court did, however, instruct the jury that there was no evidence presented as to this fact.

1. This charge was eventually dismissed.
2. This case was disposed of as a violation and defendant paid a $50 fine.

After this witness concluded his testimony, a conference was held in the chambers of the Justice presiding to determine the prosecutor's good faith basis for asking the above question. Defense counsel noted that, while the prosecutor had interviewed the bartender, the latter was not called to testify that defendant had displayed a gun in the bar on the night of the shooting. The prosecutor replied that his good faith basis for this question was not based on information received from the bartender. Instead, one of the teenagers, who was with complainant when he was injured, told the prosecutor that the bartender told him about seeing defendant with a gun on the night of the incident. The court directed that the prosecutor could not ask this same question again.

The second character witness testified that defendant had a reputation for being an unexcitable and gentle person. This witness explained that defendant had been employed since 1959 by the company for which she is a sales agent. On cross-examination the prosecutor asked this witness if she was aware of defendant's prior arrests. She testified that she was aware of the present arrest and the one in 1974. However, she was not aware of the first arrest until defense counsel had recently advised her of it. She also noted that the 1957 incident occurred two years before defendant commenced his present employment.

James Tarrant, the alibi witness, testified that he had known defendant for the past 10 years and they often went to Hickey's Bar together. On the night of this incident, this witness was in the bar along with defendant and his wife and numerous others. According to this witness, a young man entered the premises at approximately 12:30 A.M. and asked if he could use a dime to call the police emergency number because "some kid just got shot". At that moment defendant's wife was sitting next to this witness and he could see defendant standing 5 feet away from him. The records of the police department were admitted into evidence to show that the authorities were notified about the shooting incident between 12:24 and 12:30 A.M.

Defendant assigns error to, *inter alia*, the court's charge on alibi and maintains that the cross-examination

of the character witnesses was improper. We find these arguments persuasive and now reverse defendant's conviction and dismiss the indictment.

Normally, the failure to object at trial to some of the now complained of errors, would not be reviewable on appeal. However, the cumulative effect of these several errors does require our intervention "[a]s a matter of discretion in the interest of justice" (CPL 470.15, subd 3, par [c]). Moreover, it cannot be said that these errors are harmless beyond a reasonable doubt *(People v Crimmins,* 36 NY2d 230).

■ The court's charge to the jury on the defense of alibi was error. The court charged:

"Evidence with relation to an alibi should be most carefully scrutinized. If the defendant's guilt is not established beyond a reasonable doubt by reason of the truth of an alibi, you must acquit him. The defendant is not required to prove an alibi beyond a reasonable doubt, but you must be satisfied as to the truth of that alibi * * *

"It is for you to determine, the jury to determine, whether or not the alibi should be believed as to the particular crime for which it is offered."

The court erroneously singled out the issue of alibi and instructed the jury that they were to "most carefully scrutinize" the evidence relating thereto. This instruction did more than merely highlight an aspect of the trial. It placed an unfair burden on this particular theory to the exclusion of all other theories presented. In addition, the language used by the trial court has been previously condemned by this court *(People v Jones,* 74 AD2d 515). These instructions erroneously indicated that defendant had the burden to prove the truth of his alibi defense. The charge failed to instruct the jury that it was the burden of the People to disprove this defense beyond a reasonable doubt. (Penal Law, § 25.00, subd 1.) It was error to charge that the jury "must be satisfied as to the truth of the alibi" before the defense could raise a reasonable doubt as to the guilt of defendant *(People v Jones, supra,* p 515). To require the defendant to bear the burden of proof and in conditioning

reasonable doubt on the truth of defendant's alibi, is a deprivation of due process. (US Const, 14th Amdt, § 1; NY Const, art I, § 6.)

■ Several errors were committed during the cross-examination of defendant's character witnesses. The first error, which was properly preserved for review, was committed when the prosecutor asked defendant's landlord if he knew that defendant had displayed a pistol to the bartender on the night of the shooting. This question was asked three times, and although the trial court strongly admonished the jury that no such evidence was presented, the mark of prejudice had already been imprinted on this trial. Regardless of the prosecutor's offer of proof, this single question went to the heart of the People's case. The defendant was indicted for attempted murder in the second degree and an element of this crime, which the People had to prove, was possession of a weapon. This question by its implication placed a pistol in the hands of defendant at the time of the shooting and thereby improperly removed from the jury the question of possession. In addition, the bartender, who was not called as a witness to verify this fact, was not the source of this information. The prosecutor informed the court, outside of the presence of the jury, that this information came from William Brennen, a friend of the complainant, who was with him at the time of the shooting. The partiality of the source of this information cannot be camouflaged. In addition, the clear import of the prosecutor's failure to call the bartender as a witness is that the bartender could not corroborate Brennen's statement. Any alleged good faith basis for asking this question is eroded by these factors and in our opinion, it was error to ask it.

■ In addition, during this phase of the trial both character witnesses limited their testimony to defendant's reputation for peacefulness. The prosecutor in cross-examining these witnesses was not so circumscribed. The prosecutor erred when he questioned both about a 1974 conviction for which defendant paid a $50 fine. This cross-examination should have been limited to the trait the witnesses testified to on direct examination. An error which was not preserved,

but which warrants our review in light of the foregoing, is that the prosecutor should not have been permitted to ask the character witnesses if they knew of any particular act of misconduct of defendant. The witnesses should have been asked if they heard about these acts, not whether they had knowledge of them. (See Richardson, Evidence [10th ed], § 153.) As was succinctly set forth by Dean Prince: "The inquiry on cross examination must, however, be limited to the witness' hearing of these disparaging reports or rumors; he cannot be questioned as to whether he himself knows of any particular act of misconduct by the defendant. And, of course, the inquiry must be conducted by the cross-examiner in complete good faith." (Ibid.)

■ Defendant was acquitted of the crimes of attempted murder in the second degree and assault in the first degree. Since we are reversing the conviction for the lesser included offense of assault in the second degree, the indictment must be dismissed (People v Mayo, 48 NY2d 245). The People cannot retry defendant for this lesser included offense without first obtaining a new indictment.

Accordingly, judgment, Supreme Court, Bronx County (SHERMAN, J.), rendered on September 20, 1979, convicting defendant, after trial by jury, of assault in the second degree and imposing a sentence of up to four years, should be reversed on the law, the facts, and as a matter of discretion in the interests of justice, the judgment of conviction vacated and the indictment dismissed, without prejudice to resubmission to the Grand Jury.

BIRNS, J. P., CARRO, FEIN and LYNCH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on September 20, 1979, reversed, on the law, the facts, and as a matter of discretion in the interests of justice, the judgment of conviction vacated and the indictment dismissed, without prejudice to resubmission to the Grand Jury, as indicated in the order of this court.