(May 21, 1985)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD BENDELL, Appellant. — Judgment, Supreme Court, New York County (Baer, J.), rendered October 14, 1983, convicting defendant, after jury trial, of bribery in the second degree and imposing a fine of $3,500, reversed, on the law, and remanded for a new trial.

In this short jury trial, the prosecutor improperly injected irrelevant and prejudicial matters, not in evidence, in both his examination of the witnesses and again in summation. The cumulative effect of this prejudicial conduct deprived the defendant of a fair trial on the charge of bribery in the second degree.

Police Officer Bills, who was the People's sole witness, testified that when he stopped defendant near the Cross Bronx Expressway for speeding, defendant offered him $100 "to forget about the summons". The officer testified that defendant re-

peated the offer on three separate occasions and that it was on the third repetition, when defendant offered to drive around the block and leave the $100 on the seat, that Bills made the arrest.

Defendant's entire case consisted of the attempt on cross-examination to impeach Bills' credibility and the offer of two character witnesses. It was during the rebuttal of defendant's case that the overeager prosecutor introduced prejudicial statements not in evidence.

On cross-examination of Bills the defense demonstrated that Bills had not recorded three separate bribe offers in any of the earlier reports he had prepared in connection with the case, including his memo book, the arrest worksheet and the Criminal Court complaint and accompanying affidavit sworn to by Bills.

Upon redirect examination the Assistant District Attorney inserted his own testimony into the case by the manner of his questioning. In his attempt to rehabilitate Bills he reminded Bills, over objection, that "I" drafted the Criminal Court complaint that "you" signed and "I" interviewed "you" in the complaint room before drafting the complaint. He also elicited testimony from Bills that the defendant made the offer three times, by a question phrased in terms of "did you tell me" as if to intimate that telling him made it true. The prosecutor reiterated these comments during his summation, again suggesting to the jury that it believe the police officer's testimony on the basis of the prosecutor's credibility.

In so proceeding, the Assistant District Attorney became an unsworn witness for the prosecution and impermissibly placed his own veracity as an issue before the jury. A prosecutor may not inject his own credibility into the trial (*People v Paperno,* 54 NY2d 294), and in so doing he influences the jury so as to deprive a defendant of his right to a fair trial (*People v Vann,* 54 AD2d 356; *People v Gregory,* 19 AD2d 749).

The impact of this impermissible conduct was exacerbated when the prosecutor went on to place further unsworn prejudicial matter before the jury during his overreaching cross-examination of defendant's two character witnesses. These two witnesses, a nun and a police detective, had testified simply and directly as to defendant's reputation in the community for integrity and honesty. On cross-examination the prosecutor repeatedly asked both witnesses whether they were aware or had heard that there were "numerous complaints" against defendant before the Better Business Bureau and Department of Consumer Affairs and whether their opinions would change if they

were aware of these complaints variously described as "involving questionable business practices" or "unfair consumer practice".

While it is true that a defendant who calls character witnesses makes his own reputation a subject of inquiry, there are certain limitations. Character witnesses may be cross-examined as to certain bad acts of the defendant; however, such questioning should be confined to whether the witness heard these disparaging reports or rumors, to determine the witness' credibility and establish his or her grounds of knowledge (*People v Lediard,* 80 AD2d 237; *People v Fay,* 270 App Div 261, *affd* 296 NY 510). The inquiry cannot be used to prove the truth of the rumors or specific reports. Moreover, the prosecutor must act in complete good faith. (*See, People v Kuss,* 32 NY2d 436.)

Here, both witnesses unequivocally denied having heard of these complaints. The inquiry should have ended there. Instead, the prosecutor repeated these questions, over continued objection, in an untoward manner that was intended to convey to the jury the truth of the complaints. The prosecutor compounded this error by mischaracterizing the testimony of the witnesses in his summation and by repeating the allegation, not in evidence but based only on his own unsworn statement, that defendant "engaged in bad business practice". As a result, the jury was unfairly left with the impression that the defendant was an unscrupulous businessman inclined to commit the offense charged. While such unfairness could have been ameliorated by cautionary instructions advising the jury that the questions on cross-examination were intended only for the purpose of testing the accuracy of witnesses' knowledge of the defendant's reputation and not to prove the truth of the statement, no such instructions were given by the trial court. (*Cf. People v Kuss, supra,* at p 444.)

The cumulative effect of these errors distracted the jury from the issues of the proof of the crime charged and instead injected irrelevant and prejudicial concerns which deprived defendant of his fundamental right to a fair trial. Concur — Carro, Lynch and Ellerin, JJ.

Murphy, P. J., and Sullivan, J., dissent in a memorandum by Murphy, P. J., as follows: The issues raised by the prosecution's questioning of Officer Bills with regard to the number of times the defendant offered the bribe were confronted in substantially similar circumstances by the Court of Appeals in *People v Ortiz* (54 NY2d 288). In that case a defendant accused of three murders gave an inculpatory statement to an Assistant District Attorney who subsequently conducted the prosecution at trial.

During voir dire, the prosecutor asked prospective jurors, " 'Will any of you have any problem with the fact that I took the statement?' " (*Supra,* p 291.) During the course of the trial, a witness was asked by the prosecutor with regard to the defendant's questioning, " 'did I or anybody else yell at the defendant?' " (*Supra,* p 291.) The defendant's confession, complete with references to the prosecutor as questioner, was also read to the jury. In the absence of any claim that the prosecutor had himself engaged in any coercion of the defendant, the Court of Appeals found that no reversible error had occurred despite the fact that "the voluntariness of the confession [was] an important issue at trial." (*Supra,* p 291.) Essentially, *Ortiz* stands for the proposition that where a prosecutor has, in effect, become an unsworn witness and injected his or her credibility into the proceedings by virtue of the admission into evidence of the prosecutor's pretrial conduct, no reversible error will be ascribed where such conduct does not become an actual issue at trial or otherwise result in a substantial likelihood of prejudice to the defendant.

Using the same type of analysis as the Court of Appeals in *Ortiz* (*supra*) in relation to the instant case, we can only conclude that the prosecutor's reference to his taking a prior consistent statement from Bills, while improper, does not warrant reversal. The pretrial conduct in question is more innocuous than that complained of in *Ortiz.* There the prosecutor was an active participant in the questioning of a defendant accused of murder, rather than a mere passive recipient of an officer's account of a bribery attempt.

Neither *People v Vann* (54 AD2d 356) nor *People v Gregory* (19 AD2d 749), cited by the majority, both of which predate *Ortiz* (*supra*), compels a different conclusion. In *Vann,* the defendant's murder conviction was reversed because of the cumulative effect of the Trial Judge's open display of partiality towards the prosecution, his failure to charge the jury that a 35-hour prearraignment delay, lack of food and physical mistreatment were factors to be considered in determining the voluntariness of the defendant's inculpatory statements, as well as the prosecutor's uncalled-for personal assertion of the absence of any intimidation of the defendant and his explanation of the prearraignment delay. The prosecutor in *Gregory* vouched for the fact that the People's key witness, the defendant's accomplice, had not been offered leniency in return for his testimony. The blatant prejudicial effect of the prosecutor's statement in *Vann,* combined with the other improprieties committed by the trial court, makes that case of little relevance to the present circumstances. While

*Gregory* is closer to the facts in this appeal, it, too, is easily distinguished. There the prosecutor bolstered the credibility of his key witness, an admitted accomplice in the crime with a clear motive to lie in identifying the defendant as the perpetrator of the robbery. In the instant case no motive was established for Officer Bills to lie or to fabricate a story that the defendant had offered him $100 to refrain from issuing a speeding ticket. Indeed, Bills' testimony was completely consistent on the fact that a bribe had been offered. It was only on the tangential point of how many times the money had been offered that any discrepancy arose.

Implicit in *Ortiz* (*supra*) and similar cases dealing with prosecutorial misconduct is whether the error involved was of sufficient prejudicial effect so as to have deprived the defendant of a fair trial (*see, People v Paperno,* 54 NY2d 294). To whatever extent the prosecutor in the instant case may have become an unsworn witness or injected his credibility into the proceedings, it was at most limited to the collateral issue of how many times the defendant offered the bribe to Officer Bills. Disregarding the improper testimony, there was a sufficient residuum of competent evidence upon which the jury could find the defendant guilty of bribery in the second degree.

Furthermore, there was no impropriety in the prosecutor's questioning of defendant's character witnesses as to whether they had heard of complaints filed with the Better Business Bureau concerning the defendant's operation of his business. Both witnesses stated that their knowledge of defendant's reputation for honesty and integrity was based upon his standing as a businessman in the community. Such questions merely tested the accuracy of the character witnesses' knowledge and were not submitted for the truth of the complaints, the details of which were not elicited at trial. Lastly, a good-faith basis for the prosecutor's cross-examination must be presumed inasmuch as defense counsel failed to pursue the prosecutor's offer at trial to produce correspondence from the Better Business Bureau concerning complaints against the defendant. (*People v Kuss,* 32 NY2d 436.)

For the foregoing reasons, we would affirm the defendant's conviction of bribery in the second degree.