[619 NYS2d 702]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY COLAS, Appellant.

First Department, December 6, 1994

## APPEARANCES OF COUNSEL

*Charles D. Donohue, Jr.,* of counsel, New York City *(Barry D. Leiwant* on the brief; *Shanley & Fisher, P. C.,* and *Philip L. Weinstein,* attorneys), for appellant.

*David J. Mudd* of counsel, New York City *(Mark Dwyer* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

OPINION OF THE COURT

RUBIN, J.

Defendant was arrested on February 19, 1982 by New York City police officers for a rape which took place at approximately 5:15 A.M. on July 19, 1981. Prior to trial, defendant moved to suppress the victim's identification of him as her assailant. On November 28, 1984, Supreme Court conducted a *Wade* hearing and denied defendant's motion. Jury trial commenced on December 3, 1984 and, on December 7, the jury returned a guilty verdict on all counts. Defendant was sentenced on January 10, 1985 to concurrent terms of imprisonment totalling a minimum of 16⅔ years and a maximum of 50 years.

By notice of motion dated October 9, 1992, defendant sought to vacate the judgment pursuant to CPL 440.10, which motion was denied by the Trial Justice on December 9, 1993. By order of this Court dated February 15, 1994, the appeal from the denial of defendant's CPL 440.10 motion was consolidated with the appeal from the judgment.

It took nearly two years for this case to come to trial. The complaint was filed on February 19, 1982, the date of defendant's arrest, and the indictment was returned on February 24, 1982. This indictment was superseded because the People failed to afford defendant the opportunity to testify before the Grand Jury in accordance with his request. By way of motion returnable on August 16, 1982, defendant sought to dismiss the superseding indictment, filed March 26, 1982. On December 9, 1982, Supreme Court granted the motion on the ground of prosecutorial misconduct before the Grand Jury because defendant had been improperly questioned about certain prior bad acts. A second superseding indictment was finally returned on January 28, 1983, charging defendant with rape in the first degree, sodomy in the first degree, attempted murder in the second degree, and attempted robbery in the first degree. Trial did not take place until the end of 1984. Despite the length of time that elapsed between the filing of the complaint and the commencement of trial and despite repeated invitations by the court to submit a motion to dismiss the indictment on speedy trial grounds and defense counsel's representations of his intention to do so (the last time at sentencing), no CPL 30.30 motion was ever made.

On this appeal, defendant contends that his conviction should be reversed because he was not present at a *Sandoval*

hearing; because cross-examination into prior bad acts was conducted in bad faith and for the purpose of demonstrating his propensity to commit similar crimes; because the complainant's identification at a lineup and in court was procured by suggestive procedures; and because his defense did not meet even minimal standards of effectiveness.

Defendant's claim that he was excluded from the *Sandoval* hearing is based on the court's comment: "Let the record show that I have conferred with counsel regarding a *Sandoval* ruling." The People properly note that there is nothing in the record besides this equivocal remark that establishes either his presence or absence from the conference *(People v Kinchen,* 60 NY2d 772, 773-774; *People v Charleston,* 54 NY2d 622, 623; *People v Bharat,* 204 AD2d 169, *lv denied* 84 NY2d 822; *People v Bagarozy,* 182 AD2d 565, 566, *lv denied* 80 NY 2d 901).

█ This is not, however, the end of the *Sandoval* analysis. Defendant's next point brings up for review whether the prosecutor made inappropriate use of prior convictions and therefore violated the scope of the court's ruling. There is no dispute that defendant was properly asked about a prior conviction for attempted assault, a class B misdemeanor, for which he received a sentence of probation. At issue is an alleged youthful offender gun conviction, the facts underlying which, the court ruled, could be used to impeach defendant's credibility should he take the stand. The court noted that "the District Attorney does not have the full background material relating to the Y.O." and made its ruling conditional on submission of material to "completely support what the District Attorney has said to me regarding that Y.O. conviction". The Assistant District Attorney assured the court, "I have it. It's just in the possession of my assistant this morning."

At trial, the prosecutor proceeded to question defendant about this attempted armed robbery of a cab driver, in which defendant denied any involvement. Only after defendant testified both that he had known the cab driver for many years and that the charges had been dismissed did the prosecutor request a recess to unseal the court record. Although it conclusively established that defendant was exonerated of any wrongdoing, the jury was never informed of this fact. Defense counsel never requested any instructions, and the last word on the topic was the prosecutor's misleading question, "So your testimony is this afternoon that this case was dismissed; is

that right?", to which defendant responded, "Yes, to the best of my recollection, the case was dismissed."

Defendant's contention that he was not present at the *Sandoval* hearing is certainly a logical conclusion to be drawn from the prosecutor's foray into obviously uncharted territory. Had defendant been present, he presumably would have availed himself of the opportunity to make "a meaningful contribution to the colloquy" by advising the court that the charges had been dismissed *(People v Favor,* 82 NY2d 254, 267). But even if it is conceded that the record does not support defendant's exclusion from the hearing, the use made of this supposed conviction is clearly contrary to the condition imposed by the court and, thus, exceeded the scope of the *Sandoval* ruling *(see, People v Owens,* 203 AD2d 106).

Having violated the ruling in a manner that obviated any motion to preclude use of the alleged crime on cross-examination, a motion that the court had expressly reserved defendant's right to make, the prosecutor made absolutely no attempt to minimize the prejudice resulting from the introduction of evidence of an uncharged crime. As noted in *People v Ventimiglia* (52 NY2d 350, 359 [1981]), evidence of uncharged crimes is excluded because jurors will tend to " 'believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime' " (quoting *People v Molineux,* 168 NY 264, 313) and so tend to convict upon lesser proof than required. The exclusionary rule affording "protection against potential prejudice gives way when evidence of prior crime is probative of the crime now charged" *(supra,* at 359). However, the burden is placed upon the prosecutor to supply the court with a basis for its introduction. "When a prosecutor, knowing that such evidence is to be presented, waits until objection is made when it is offered during trial before informing the court of the basis upon which he considers it to be admissible, there is unfairness to the defendant, even if his objection is sustained, in view of the questionable effectiveness of cautionary instructions in removing prior crime evidence from consideration by the jurors" *(People v Ventimiglia, supra,* at 361-362).

The prejudice to defendant from cross-examination concerning the alleged youthful offender crime is apparent. Like the crime charged, it was an assault committed with a handgun during which the victim was grabbed around the neck and threatened with physical injury. The effect of the prosecutor's inquiry was to suggest to the jurors that defendant had the

propensity to commit an assault of the kind alleged in the indictment. The prosecutor's dereliction of her responsibility to avoid such prejudice in the first instance is exacerbated by her failure to attenuate its impact by informing the jurors of the facts disclosed in the unsealed record.

Not content to have confronted defendant with one uncharged crime, the prosecutor immediately proceeded to question him about another. She phrased her questions to defendant to suggest that he "grabbed a woman", who was a fellow student at a school he attended, and "dragged" her "to a spot further down in the hallway to a corner in a secluded part of that hallway".

The prejudicial effect of this line of inquiry clearly outweighed any probative value it may have possessed in assessing defendant's credibility as a witness (see, People v Schwartzman, 24 NY2d 241, 247-248, cert denied 396 US 846). Discussion at a Bench conference reveals that no arrest resulted from this asserted assault. The school never reported it, and it was unknown whether any internal disciplinary action was taken against defendant as a result. Finally, the court was told that the alleged victim had no recollection of the incident, which was recounted to an investigator by an administrator at the school.

Although it allowed the prosecutor to question defendant about this matter, the court acknowledged that "these allegations would be unusually damaging" and limited the extent of inquiry. The prosecutor, however, violated the restriction by ignoring the court's explicit direction that "[t]he answer to the question will be yes or no. If it is no, she will go no further." After defendant denied any involvement in the incident, the prosecutor continued to question him, eliciting the concession that defendant knew the alleged victim "very well."

From the information supplied to the court, there was no basis upon which to conclude that defendant committed the crime alleged by the prosecutor (People v Duffy, 36 NY2d 258, 262, cert denied 423 US 861 [1975]). The inquiry was undertaken in bad faith and was, in the court's own words, "unusually damaging". The similarity between the offense described and the rape for which defendant stood charged, in which he is alleged to have forced the victim to a secluded place at the top of a flight of stairs, can only have been calculated to instill in the minds of the jurors that defendant had a propensity to commit the crime for which he was on trial. The law imposes

an inflexible bar to such inquiry *(supra,* at 262), and it was an abuse of the sound discretion entrusted to the court to have permitted it *(People v Simpson,* 109 AD2d 461, 467, *appeal dismissed* 67 NY2d 1026).

The evidence of defendant's guilt in this case is far from strong. There is no physical evidence connecting him to the crime because the police failed to preserve seminal fluid for analysis by the Medical Examiner's Office. They also failed to conduct tests on blood, found on a canvas bag the assailant was carrying, even though defendant's blood type—B negative —is fairly rare. Although the victim alleges that she struggled with her assailant, during which the handgun he was wielding discharged, no spent round or shell casing was recovered, and police received no report of a gunshot from anyone in the building.

■ The evidence against defendant consists entirely of the eyewitness testimony of the victim. However, the procedure employed by the police to obtain the victim's identification of defendant as her assailant was highly questionable. Moreover, the victim's statements, both with respect to the features of her attacker and the conditions under which she viewed him, contain serious inconsistencies.

A log of 911 calls appended to defendant's CPL 440.10 motion indicates that the rape was first reported at 5:33 A.M. Weather reports attached to the moving papers indicate that atmospheric conditions on July 19, 1981 were reported as either haze or fog at nearby observatories and that sunrise did not occur until 5:40 A.M. A police report regarding the incident states that, at about 5:15 A.M., the victim was accosted at gunpoint on the fourth-floor landing of 348 West 118th Street by a male black, 25 or 26 years old, about 5 feet 8 inches in height and 180 to 190 pounds in weight.

The victim testified at trial that the weather on the day of the incident was "bright, crisp, it was a very nice day." She stated that the light was "real bright next to the window" on the fourth-floor landing where she first encountered her assailant. On cross-examination, she stated that she was able to view her attacker in good light provided by the window and from a skylight at the top of the stairs where the rape took place. She conceded that she was not wearing her glasses at the time of the attack.

Defendant maintains that he has never weighed more than 170 pounds. He was first identified by the victim when she

was shown four wanted posters, one of which (number 3) bears a photograph of defendant. Poster number 4 had originally been shown to the victim a few days earlier, at which time she had indicated that her attacker had a thinner face. Poster number 1 is the same sketch as poster number 4, but the face has been modified to make it thinner. The poster from which defendant was identified, like posters number 1 and number 4, has the words "WANTED FOR RAPE" printed in bold letters at the top and contains details of the particular rape below his picture. Significantly, defendant is described on the poster as being 5 feet 11 inches tall and weighing only 155 pounds. Poster number 2 is a sketch of a man without a mustache and the only one lacking the heading "WANTED FOR RAPE". The detective who showed the victim the posters testified at the *Wade* hearing that he was unable to remember if he had folded the posters to hide the "WANTED FOR RAPE" heading from her view. The victim did not testify at the hearing.

Defense counsel failed to make effective use of any of the discrepancies in either the victim's account of the assault or her identification of defendant. However, even accepting the People's argument that counsel failed to preserve any issue for appellate review, the procedure used by police to obtain an identification is highly questionable, both because it suggested that he had previously been in trouble with the law *(People v Caserta,* 19 NY2d 18, 21) and because it directed the victim's attention to the one person depicted with a mustache that she had not previously ruled out as her assailant *(People v Shea,* 54 AD2d 722; *see also, People v Rudan,* 112 AD2d 255, 256).

Viewed in its entirety, the procedure was "so unnecessarily suggestive and conducive to an erroneous identification as to violate defendant's right to the due process of law" *(People v Howard,* 130 AD2d 384, 385, *lv denied* 70 NY2d 648). Therefore, the People were required to establish an independent basis for the victim's identification of defendant as the perpetrator *(People v Burts,* 78 NY2d 20; *see also, People v Williams,* 182 AD2d 490, *lv dismissed* 80 NY2d 897).

The cumulative effect of the prejudice resulting from the introduction of evidence of uncharged crimes *(see, People v Butler,* 185 AD2d 151, 145; *People v Dowdell,* 88 AD2d 239, 248), viewed together with the inherent weakness of a conviction resting on flawed identification procedures, makes it unnecessary to reach the contention that trial counsel was ineffective in his representation of defendant. It bears mention that defendant, who has steadfastly maintained his innocence

of this crime, interposed an alibi defense, claiming that he was in South Carolina on the date of the rape in question. It appears that no effort was undertaken by counsel to procure the attendance of any of a number of alibi witnesses at trial, although his attention was directed to the pertinent procedure (CPL 640.10) by the court on more than one occasion *(see, People v Zayas,* 61 AD2d 594, 598). The only alibi witness to testify was obtained entirely through the efforts of defendant's family, and this witness was unable to recall specific dates.

■ A new trial is clearly necessary in this matter, including a *Wade* hearing to determine if there is any independent basis upon which the victim can identify her assailant *(People v Burts, supra,* at 24-25). While the People are correct that there was no objection sufficient to preserve the question of defendant's right to a speedy trial (CPL 470.05 [2]), we reach the issue in the interest of justice and grant defendant leave to make a motion for dismissal of the indictment (CPL 470.15 [1]; *People v Robinson,* 36 NY2d 224, 228-229, *rearg denied* 37 NY2d 786, *mot to amend remittitur granted* 37 NY2d 784).

Accordingly, the judgment of the Supreme Court, New York County (Seymour Schwartz, J.), rendered January 10, 1985, which convicted defendant, after jury trial, of rape in the first degree, sodomy in the first degree, attempted murder in the second degree, and attempted robbery in the first degree, and which sentenced him to concurrent indeterminate terms of imprisonment of from 8⅓ to 25 years on the rape and sodomy counts, to run consecutively to concurrent terms of 8⅓ to 25 years on the attempted murder count and 5 to 15 years on the attempted robbery count, should be reversed, and the matter remanded to Supreme Court for a new trial to be preceded by a hearing to establish whether there is an independent source for the identification of defendant by the victim. Defendant is granted leave to move for dismissal of the indictment against him pursuant to CPL 30.30.

WALLACH, J. P., ASCH and WILLIAMS, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 10, 1985, reversed, and the matter remanded to Supreme Court for a new trial to be preceded by a hearing to establish whether there is an independent source for the identification of defendant by the victim. Defendant is granted leave to move for dismissal of the indictment against him pursuant to CPL 30.30.