■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHNNIEMAE CRAWFORD, Also Known as JOHNNY MAE CRAWFORD, Appellant. [683 NYS2d 216] —Judgment, Supreme Court, New York County (Harold Tompkins, J.), rendered March 14, 1996, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing her, as a second felony offender, to a term of 7½ to 15 years, reversed, on the law, and the matter remanded for a new trial.

Defendant was arrested on August 18, 1995 based on her participation with another in the sale of crack cocaine to an undercover officer. The transaction took place in a park located at 27th Street and 2nd Avenue and was observed by a ghost officer. Defendant was arrested shortly after the sale, and was subsequently identified by the undercover officer. The codefendant was arrested while attempting to leave the park, and the police recovered more narcotics and prerecorded buy money from him.

At trial, defendant called Linda Trafton as a defense witness. Trafton testified that she and defendant had been drinking together in the park since the previous day, and that at no time did she observe defendant sell drugs. On cross-examination, the prosecutor asked Trafton whether she had ever gone by the name "Williams", to which Trafton responded negatively. The prosecutor then asked Trafton whether she had ever engaged in prostitution near the park where defendant was arrested, and she responded "no." Next, with a long "rap sheet" in his hand, the prosecutor asked Trafton whether she had used 13 specific aliases and Trafton responded no to each one.

At a sidebar, defense counsel requested an offer of proof from the prosecutor demonstrating that the rap sheet (which "accidentally" fell to the floor during the prosecutor's cross-

examination) actually was Trafton's. Defense counsel noted that the name on the rap sheet was "Linda Williams" not "Linda Trafton." The prosecutor made the following representations in an attempt to establish a good-faith basis for the questioning: that a criminal records check regarding "Linda Trafton" did not yield any results; that he believed that Trafton had identified herself as "Linda Ann Christina *Williams* Trafton" when she was sworn in as a witness; that the rap sheet for "Linda Williams" revealed a woman whose race and age matched Trafton's, and that Linda Williams had been arrested for numerous prostitution offenses in precisely the same area as defendant's arrest and Trafton's residence; and lastly, that defendant herself had a prior arrest for prostitution during which she used the street name "Mercedes", and Trafton had used that name in referring to defendant during the trial. These facts caused the prosecutor to conclude that Trafton and defendant "may know each other through the profession of prostitution."

Upon defense counsel's request, the court asked the stenographer to check her notes, which revealed that Trafton had not used the name Williams when she was sworn in. The prosecutor then conceded that he was mistaken and told the court that he would not oppose a jury instruction advising the jury that the rap sheet was not evidence. However, the prosecutor opposed any charge instructing the jury to disregard the questions related to the rap sheet because, in his view, he had a good-faith basis to ask them. Over defense counsel's vehement objection, including a motion for a mistrial, the court told the jury that the sheet on the prosecutor's desk "was not evidence," but declined to instruct them any further.

On appeal, defendant claims that the court's refusal of his request for a curative instruction regarding the improper cross-examination of a defense witness deprived her of a fair trial. We agree. "A witness may be interrogated upon cross-examination with respect to any immoral, vicious or criminal act * * * which may affect [her] character and show [her] to be unworthy of belief, provided the cross-examiner questions in good faith and upon a reasonable basis in fact" (*People v Simpson*, 109 AD2d 461, 464, *appeal dismissed* 67 NY2d 1026, citing Richardson, Evidence § 498 [Prince 10th ed]; *see also, People v Greer*, 42 NY2d 170, 176; *People v Schwartzman*, 24 NY2d 241, 244, *cert denied* 396 US 846; *People v Alamo*, 23 NY2d 630, *cert denied* 396 US 879). Of course, the nature and scope of such questioning is best left to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse

of such discretion (*People v Schwartzman, supra; People v Simpson, supra*).

Where a prosecutor fails to demonstrate a good-faith basis for the questioning, or that the allegations have a reasonable basis in fact, it is error for a trial court to permit such questioning or to refuse to strike it from the jury's consideration (*see, People v Colas*, 206 AD2d 183, 188, *lv denied* 85 NY2d 907; *People v Liriano*, 173 AD2d 489; *People v Simpson, supra; People v Huntley*, 87 AD2d 488, 495, *affd* 59 NY2d 868). While the cross-examination in the present case involved a defense witness rather than the defendant herself, the same rule obtains if the witness's testimony is material to the defendant's guilt or innocence (*see, People v Torriente*, 131 AD2d 793, 793-794; *see also, People v Lediard*, 80 AD2d 237, 242). Here, the testimony of Trafton was unquestionably material since it was in the nature of alibi testimony.

The record demonstrates that the prosecutor's questioning of Trafton regarding her alleged history of prostitution lacked a reasonable basis in fact (*People v Colas, supra; People v Liriano, supra; People v Simpson, supra*). The underlying premise of the prosecutor's claimed good-faith basis, to wit, Trafton's use of the name Williams when she was sworn in as a witness, proved to be completely erroneous. Moreover, the additional reasons given by the prosecutor amounted to nothing more than a hunch that Trafton might be the person named in the rap sheet. The cross-examination of a witness regarding inflammatory allegations of prior immoral and criminal activity cannot be based on so flimsy a predicate (*People v Alamo, supra*, at 633 [good-faith questioning requires that the questioner have "some reasonable basis for believing the truth of things he was asking about"]). This error was compounded by the court's inexplicable refusal to instruct the jury to disregard the improper questioning (*see, People v Liriano, supra*). These were groundless accusations, as the prosecutor conceded, and should have been stricken regardless of the prosecutor's subjective assertion that the questions were asked in good faith. It is disturbing to us that a trial court, having observed that a witness's reputation was impugned by false and scurrilous allegations, would refuse to rectify the situation when given the opportunity. Proper ameliorative action by the trial court might have cured any error resulting from the questioning.

The error was not harmless. Although strong evidence of defendant's guilt existed, the prosecutor's negligent and misleading cross-examination of Trafton destroyed any chance that the jury would believe the alibi-type defense (*People v*

*Liriano, supra; People v Delacruz,* 127 AD2d 887). The case came down to a credibility contest between Trafton and the two police officers who claimed to witness defendant's participation in a drug sale. Defendant's hope of winning this credibility contest was dashed when the prosecutor's baseless accusations suggested to the jury both that Trafton was a prostitute and that she was a liar for denying that history (*see, People v Simpson, supra* [while prosecutor may continue to cross-examine witness about prior bad acts in an attempt to persuade witness to change testimony, it is improper to use innuendo and suggestion to persuade jury to disbelieve the witness's denial]). We find this fundamental error to be harmful without regard to the quantum of evidence at trial (*People v Crimmins,* 36 NY2d 230, 240, n; *see also, People v Savvides,* 1 NY2d 554; *cf., People v Schwartzman, supra*). Concur—Milonas, J. P., Rosenberger, Wallach and Mazzarelli, JJ.

Tom, J., dissents in a memorandum as follows: While I agree that the court should have provided a more expansive curative instruction, I do not believe that this single flaw in an otherwise unremarkable trial warrants reversal (*cf., People v Torriente,* 131 AD2d 793 [multiple errors; cumulative effect required reversal]; *accord, People v Colas,* 206 AD2d 183, *lv denied* 85 NY2d 907), where the error went to the credibility of a witness whose testimony seemed incredible in any event, and where the conviction rested on overwhelmingly convincing proof.

Defendant's conviction arose from the sale of crack, in Mt. Carmel Park, to an undercover officer, whose ghost also observed the transaction.

Defendant called Linda Ann Christina Richards Trafton as an alibi witness to establish that she had been in defendant's company all day and had not observed the drug sale. However, Trafton claimed to have begun drinking beer, in 40-ounce bottles, with defendant about 6 P.M. the prior evening. A man whose name she could not remember joined them around 10 A.M., and they continued until defendant's arrest the next afternoon at 4:20 P.M. Trafton's admitted intoxication damages her credibility, which is further undermined by the claim that some 22 hours of beer drinking required only two toilet trips. More numerous absences, of course, would have diminished the viability of the alibi, but only two absences is an implausibility that speaks for itself. Trafton claimed to have only met defendant the prior November while residing in a nearby shelter.

The damage resulting from the prosecutor's concededly inac-

curate basis on which to cross-examine Trafton as to whether she had a past prostitution record must be evaluated in this light (compare, *People v Torriente, supra* [in which the prosecutor improperly questioned the victim, called by defense, about drug use; but reversal was required because of the cumulative effect of numerous errors]). For purposes of Trafton's cross-examination, the prosecutor had secured a NYSIS sheet connected with an alias that the prosecutor believed her to have used. The prosecutor later explained to the court that he thought she had given her name as "Linda Ann Christina Williams Trafton" when she was sworn in. In running a NYSIS check on these names, one "Linda Williams" emerged. Linda Williams had several aliases, all of whom which connected to an October 1954 date of birth (Trafton's date of birth was November 1954). "Williams" was a Black female (as was Trafton), with a record of prostitution arrests and loitering for purposes of prostitution associated with a location two blocks from Trafton's current residence and close to the park. Coincidentally, defendant, too, had been arrested in connection with loitering for prostitution in the same location. Trafton's reference to defendant by defendant's street name "Mercedes" used for prostitution reinforced the prosecutor's belief that Trafton, as "Linda Williams," had been associated with defendant from a prior history of prostitution. As such, the prosecutor, as part of cross-examination, delved into Trafton's testimony concerning her past, twice asking whether she had used the name Linda Williams, to which the responses were negative, asking whether she had used various aliases, to which the responses were negative, and twice asking her whether she was ever involved in prostitution, which also received negative responses. She denied having ever been in contact with law enforcement, other than on a few occasions when she had jumped subway turnstiles. During this questioning, which occupied only five out of forty pages of the record, the prosecutor looked to the NYSIS sheet held in his hand, although there is no indication that the jury during this period was cognizant of what it was.

At sidebar, defense counsel essentially conceded the propriety of this general cross-examination assuming the accuracy of the identification of the witness, but asked for an offer of proof that the prosecutor was connecting the witness with the person identified in the rap sheet. The prosecutor provided the explanation noted above. The court reporter's readback, though, contained no "Williams" in the name provided by the witness, placing in doubt the accuracy of the prosecutor's information. Furthermore, when the prosecutor approached the

bench, he had dropped the rap sheet on the floor apparently within sight of the jury—although there is no indication in the record that any juror actually observed the contents or could deduce the nature of the document. The court, making its own observation that the jury was unaware of what had transpired, rejected counsel's request that the jury be instructed that the questions, answers and the paper did not relate to the witness. Rather, the court instructed the jury to disregard the document as not in evidence, prompting counsel's mistrial motion. The court, though noting the prosecutor's error, nevertheless found a good-faith basis for the questioning (*see, People v Alamo*, 23 NY2d 630, 634-635, *cert denied* 396 US 879). Although the majority suggests bad faith by the trial prosecutor, the record supports, at best, only a mistake. Mere mistake should not, per se, be deemed bad faith.

Given the overwhelming evidence of defendant's guilt, any errors were harmless (*cf., People v Liriano*, 173 AD2d 489; *cf., People v Colas, supra* [multiple *Sandoval* errors]; *accord, People v Simpson*, 109 AD2d 461, *appeal dismissed* 67 NY2d 1026). At trial, both the undercover and the ghost officer testified. The undercover testified that he approached co-defendant Charles Powell in Mt. Carmel Park and requested two $5 bags of crack. Powell summoned defendant, described by the undercover as wearing a black bandana, black tank top and black jeans, from a few feet away and directed her to give "one" to the undercover officer. After defendant extracted a green-tinted ziplock bag from her bra and gave it to the officer, Powell gave another bag to the officer. Defendant was directly in front of the undercover during these transactions. The undercover officer then gave Powell $10 in buy money. The entire transaction was also observed from a short distance away by the ghost, who provided similar testimony on defendant's identification and similarly described her role. When the undercover officer left, Powell walked a short distance away, followed by the ghost. The ghost heard Powell tell another man to whom Powell handed the buy money that he had "just sold two," thus tying defendant in with the operation. Both men were arrested, and the buy money and additional drugs were recovered. Meanwhile, defendant had been arrested a few minutes after and in the same location as the sale. Defendant's bag of crack was identical to the bag Powell handed the undercover. The undercover made a positive identification of defendant upon her arrest.

Based on the strength of the People's evidence of guilt and the questionable testimony of defendant's only witness, this minor foray into a possible, though apparently erroneous, past

connection between Trafton and prostitution, which did not collaterally impeach defendant herself (*compare*, *People v Liriano*, *supra* [improper cross-examination of defendant regarding prior crime, for which he was not culpable]), does not persuade me that reversal is in order. Even when the prosecutor's strategic clumsiness in questioning the witness was compounded by his physical clumsiness in dropping the document, defendant's right to a fair trial was not fatally compromised. Viewed *in toto*, the error was harmless. Defendant was convicted on the basis of the evidence; the jury had an ample basis to evaluate, and reject, her alibi evidence notwithstanding the prosecutor's allusion—never developed beyond that—to the witness's potential criminal history. I find no reasonable basis to read into this record any likelihood that the prosecutor's error and the parsimony of the court's instruction in any manner affected the verdict.

However, in upholding the conviction, I would have reduced the sentence to the 6 to 12 year term actually recommended by the prosecutor as reflecting a more appropriate exercise of sentencing discretion under the particular circumstances of this case.